**AFFINITY MEMORY & MICRO, INC., Plaintiff,**

v.

**K & Q ENTERPRISES, INC., Defendant.**

No. Civ.A. 98–1231–A.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 30, 1998.

to the District of Minnesota. In this diversity action, plaintiff Affinity Memory & Micro, Inc. sues defendant K & Q Enterprises, Inc. for breach of contract, constructive fraud, and actual fraud, and seeks $98,240.30 in compensatory damages, and $500,000 in punitive damages, plus costs and attorneys fees. Both parties are computer equipment brokers; the action arises out of defendant's sale to plaintiff of Intel Pentium II processors, which were allegedly counterfeit. What is interesting about this otherwise routine attack on personal jurisdiction in a diversity context is that the mirror image action is currently pending in the United States District Court for the District of Minnesota. There, the same jurisdictional issue lurks, albeit governed there by Minnesota law. In any event, for the reasons that follow and as set forth from the bench, this action must be transferred to the United States District Court for the District of Minnesota.

## I.

### A. The Parties

Plaintiff is a Virginia corporation, incorporated in March, 1998, with its principal place of business in Dulles, Virginia. Plaintiff has no office or other facility in Minnesota, has never registered to do business in Minnesota, has never advertised in Minnesota, and has never had any physical presence in Minnesota. Plaintiff's transaction with defendant was its first and only transaction with a Minnesota resident.

Defendant is a Minnesota corporation, with its principal place of business in Rochester, Minnesota. Defendant has no office or other facility in Virginia, has never registered to do business in Virginia, has never advertised in Virginia, and has never had any physical presence in Virginia. In defendant's nine year history, it has only brokered one other sale for a company with a Virginia mailing address.

### B. The Transaction Giving Rise to the Dispute

In May of 1998, plaintiff contacted defendant by telephone and attempted to sell defendant some computer equipment. Defen-

Raymond A. Ceresa, Sterling, VA, for Plaintiff.

John M. Bredehoft, Venable, Baetjer and Howard LLP, McLean, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This matter is before the Court on defendant's motion to dismiss for want of personal jurisdiction, or in the alternative, to transfer

dant declined to purchase any of plaintiff's equipment, but offered to sell plaintiff Intel Pentium II processors in Intel factory-sealed boxes for $316 a unit. Plaintiff accepted this offer, and through nine purchase orders issued between May 7 and 22, 1998, ordered from defendant 910 Intel Pentium processors, for a total of approximately $280,000. To fill these orders, defendant used an Illinois supplier named Global Computing, Inc.[1] At defendant's direction, Global shipped the computer equipment FOB Illinois to plaintiff in Virginia. Defendant's invoices were enclosed with the shipment, and plaintiff paid defendant $98,240.30 for the first 310 processors.

Plaintiff was unable to inspect these processors because they were contained in factory-sealed packages and were intended for resale. Inspection would have required breaking the seal, which, in turn, would reduce the resale value. After resale, plaintiff's customers complained that the processors and labels were counterfeits, not genuine Intel products. The Intel fraud unit investigated and confirmed this. On receiving this information, plaintiff promptly stopped payment on approximately $190,000 of checks that had not yet cleared for the remaining processors, and demanded the return of the already-paid $98,000. Defendant refused to return the money.[2]

### C. The Ensuing Litigation

On June 22, 1998, Plaintiff filed this action as a Motion for Judgment against defendant in Virginia's Loudon County Circuit Court seeking the return of its $98,000. Two weeks later, on July 6, 1998, defendant filed a mirror image suit against plaintiff in the United States District Court for the District of Minnesota seeking the outstanding $190,000. Plaintiff was served with process in the

Minnesota action two days later, on July 8, 1998. Service was not effected in the Virginia action until July 22, 1998, when the Secretary of the Commonwealth of Virginia was served; defendant first received notice of this action on July 30, 1998.

On July 28, 1998, a week after defendant was served in the Virginia action and two days before it actually received notice, plaintiff filed an answer in the Minnesota action, *inter alia*, denying personal jurisdiction and asserting four affirmative defenses.[3] Approximately two weeks later, on August 10, 1998, a pretrial scheduling order was entered in the Minnesota action, setting September 28, 1998 as the date for the pretrial conference, and requiring (i) counsel for each party to meet before September 11, 1998 to discuss settlement, (ii) the filing of a joint complete written report of the meeting by September 21, 1998 if the parties did not settle, and (iii) the filing by each party of a confidential statement with the court three days prior to the pretrial conference. On August 24, 1998, two weeks after the scheduling order was entered, defendant in the Virginia state action removed the case to this Court.

### II.

A two-step analysis is required when evaluating the propriety of jurisdiction pursuant to a long arm statute. First, the court must determine whether Virginia's long-arm statute, Virginia Code § 8.01–328.1(A)(1), reaches the defendant and if so, then second, the court must determine whether the statutory assertion of jurisdiction is consistent with the due process clause of the Constitution, i.e., whether the statute's reach, in the circumstances, exceeds its constitutional grasp. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990).[4]

---

1. Plaintiff does not argue that Global is defendant's agent, nor is there any basis in the record for concluding that Global and defendant are related other than as broker and seller.

2. These last events occurred sometime between May 22 and June 22, 1998.

3. The matters labeled as affirmative defenses were (i) failure to state a claim upon which relief could be granted, (ii) absence of damages and unjust enrichment, (ii) waiver and estoppel,

and (iv) the first-filed rule, requiring removal to Virginia state court, where the complaint was required to be asserted as a compulsory counterclaim. Plaintiff apparently did not move separately to dismiss for lack of personal jurisdiction.

4. The burden is on the plaintiff to establish that the Court has jurisdiction over defendant, *see Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), even though defendant has removed the case from state to federal court. *See Consolidat-*

## A. The Virginia Long-arm Statute

■ Under Virginia Code § 8.01–328.1(A)(1), a court may exercise personal jurisdiction over any person "who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this Commonwealth . . ." The Fourth Circuit has noted that (i) "the purpose of the Virginia long-arm statute is to extend jurisdiction to the extent permissible under the due process clause" and (ii) a single act amounting to "transacting business" and giving rise to a cause of action may be sufficient to confer jurisdiction. *See English & Smith,* 901 F.2d at 38. Yet, although a single act by the non-resident defendant may qualify as transacting business, the single act must be significant in order to confer jurisdiction. For example, a plaintiff may not manufacture jurisdiction through a single contrived transaction.[5] Only a "substantial" single transaction will satisfy Virginia's long-arm.[6] For example, in Virginia, the shipment of goods into the state, without more, does not constitute the transaction of business, and indeed the shipment of goods " 'plus merely 'incidental activity' such as billing or negotiating thereafter in the state concerning defects in the goods" has been held not to be transaction of business for the purposes of the Virginia long-arm statute.[7]

■ Instructive here are Fourth Circuit decisions finding jurisdiction on the basis of a single contract. For example, *Peanut Corp. of America v. Hollywood Brands, Inc.* 696 F.2d 311 (4th Cir.1982) involved a single contract for the sale of peanuts. There, the Fourth Circuit found that a "modification letter, which became a part of the basic contract was addressed to and received by [plaintiff] in Virginia," when combined with "telephonic negotiations" that occurred with one party in Virginia, and numerous written communications between the parties that were sent to and received in Virginia, constituted "sufficient 'contracting' " in Virginia to satisfy the transacting business prong of the Virginia long-arm. *See Peanut,* 696 F.2d at 314. Likewise, relying on *Peanut,* the court in *English & Smith* found that personal jurisdiction over a California attorney existed on the basis of a single contract between the California attorney and a Virginia attorney because (i) the California attorney initiated the relationship with the Virginia attorney, knowing that the Virginia lawyer was likely to do the requested work in Virginia, (ii) the California attorney contracted with the Virginia attorney in Virginia, first by telephone and later in a writing that was executed in Virginia, (iii) all of the duties were performed in Virginia, and (iv) the parties exchanged numerous telephone calls and written communications, *English & Smith,* 901 F.2d at 39. Thus, as these decisions reflect, the pertinent factors for assessing whether a defendant has transacted business in the forum are (i) where any contracting occurred, and where the negotiations took place, (ii) who initiated the contact, (iii) the extent of the communications, both telephonic and written, between the parties, and (iv) where the obligations of the parties under the contract were to be performed.

These principles, applied here, leave doubt that defendant's conduct in this case amounts to "transacting business" under Virginia's

---

*ed Eng. Co. v. Southern Steel Co.,* 88 F.R.D. 233 (E.D.Va.1980). Yet, that burden is only to make a prima facie showing of a sufficient jurisdictional basis in order to survive a threshold challenge; if jurisdiction remains contested, plaintiff bears the burden of proof at trial. *See Combs,* 886 F.2d at 676.

5. *See DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419, 424 (E.D.Va.1996) (finding no personal jurisdiction where plaintiff's counsel manufactured transaction for purposes of creating personal jurisdiction over defendant).

6. *See John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664, 668 (1971) ("It

is clear that [defendant] through [its agent] voluntarily and purposefully availed itself of the privilege of conducting activities within Virginia which amounted to a substantial transaction of business in this State.").

7. *See Ajax Realty Corp. v. J.F. Zook, Inc.,* 493 F.2d 818, 821 n. 4 (4th Cir.1972) (manufacturer who shipped goods directly to purchaser as accommodation to distributor did not "transact business" in the purchaser's state). Ultimately, jurisdiction in Ajax was found under a different provision of the long-arm, now codified at § 8.01–328.1. *Ajax,* 493 F.2d at 821 (finding jurisdiction under breach of warranty in sale of goods provision of long-arm).

long-arm statute. Thus, defendant did not reach out to a Virginia company, but rather offered to sell to plaintiff only after it had been contacted in Minnesota. The original agreement took place on the telephone, with each party in its respective state. While plaintiff sent payment from Virginia, defendant performed in Minnesota by directing Global, in Illinois, in accordance with plaintiff's purchase orders to ship the processors, FOB Illinois. As a result, defendant never took title to the processors sent into Virginia; instead, title passed to plaintiff in Illinois. The parties do not identify any communications beyond the initial phone call and the nine purchase orders and invoices sent back and forth. In sum, though defendant was ultimately responsible for causing the goods to be sent to Virginia, there is significant doubt that the single transaction at issue amounts to "transacting business" in Virginia under the long-arm.

## B. Due Process

■ Assuming, arguendo, that the requirements of Virginia's long-arm are satisfied, due process must also be satisfied. Specifically, the defendant must have sufficient "minimum contacts" with Virginia so that requiring it to defend its interests in Virginia would not "offend 'traditional notions of fair play and substantial justice.'" *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction is constitutionally appropriate where a defendant has "'purposefully directed'" its activities at a forum, and the litigation "'arise[s] out of or relate[s] to' those activities." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). But where contacts are "isolated," the "reasonable foreseeability of litigation in the forum is substantially diminished." *See id.* at 476 n. 18, 105 S.Ct. 2174.

The Fourth Circuit in *Chung v. NANA Development Corp.* noted that although a single contract may properly form a constitutional basis for jurisdiction, that contract must have a "substantial connection" with the forum state, determined by the "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." 783 F.2d 1124, 1127–28 (quoting *Burger King*). In *Chung,* the Fourth Circuit found no constitutional basis for jurisdiction over an Alaskan seller of reindeer horns to a Virginia purchaser. In reaching this conclusion, the court emphasized that (i) the contract was finalized in Alaska, (ii) its essential terms were negotiated by telephone between Virginia and Alaska, which communication was initiated by the plaintiff, (iii) the defendant made no purposeful effort of its own to develop a market for its product in Virginia, it just responded to plaintiff's unilateral inquiries, (iv) payment was tendered in Alaska at the time of sale and (v) the parties entered into no agreements for a continuing business relationship beyond this single transaction in Alaska.

These principles, applied to this case, suggest that jurisdiction is as doubtful constitutionally as it is statutorily. There is little here to suggest that defendant purposefully directed its activities toward Virginia. Negotiations were apparently minimal, took place over the phone, and occurred as a result of a phone call initiated by plaintiff.[8] Moreover, defendant apparently made no attempt to develop a market in Virginia nor to establish a continuing business relationship with plaintiff. Finally, although the goods were shipped to Virginia, defendant never had title to the goods, which were shipped FOB Illinois by Global. In sum, there is significant doubt that the Virginia long-arm statute may constitutionally reach defendant in the circumstances of this case. In any event, the jurisdictional question need not be decided as

---

8. Plaintiff focuses on the fact that it called defendant to sell computer equipment, not to buy processors, and thus argues that defendant was not responding to a unilateral inquiry but purposefully directed its activities at plaintiff. But in *Chung,* the Court apparently gave no weight to the modification of the contract which occurred when the goods were not ready for delivery as promised, at which point, the Alaskan defendant affirmatively volunteered to take responsibility for shipping the goods to the plaintiff in Virginia. *Id.* at 1131. Thus, it appears that who initially reached out is the significant factor.

it appears that transfer is appropriate under either 28 U.S.C. § 1404(a) or § 1406(a).

## III.

■ Transfer is appropriate under 28 U.S.C. § 1406(a), where venue is not proper (as here if there is no jurisdiction over the defendant), and it is in the interests of justice; otherwise, dismissal is the appropriate course.[9] Even assuming venue is proper, transfer under 28 U.S.C. § 1404(a) may be appropriate. Because the Virginia action was filed first,[10] this is the appropriate forum to decide the venue and transfer issues. More precisely, this is the forum to decide whether to give effect to the first-filed rule.[11]

■ Under the "first-filed" rule, for purposes of choosing between possible venues when parallel litigation has been instituted in separate courts, the court in which jurisdiction first attaches should be the one to decide the case. *See Hop-In Food Stores, Inc. v. S & D Coffee, Inc.,* 642 F.Supp. 1106, 1107 (W.D.Va.1986). This rule is generally followed, absent a showing of the "balance of conveniences" or "special circumstances" favoring transfer. *See Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991); *United States Fire*

*Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 488–89 (8th Cir.1990). Plaintiff relies heavily on the first-filed rule in opposing transfer. But the first-filed rule is not to be applied mechanically; for example, courts have declined to defer to the first-filed action when little if anything has been done to advance that action for trial. *See Brierwood Shoe Corp. v. Sears, Roebuck and Co.,* 479 F.Supp. 563, 567 (S.D.N.Y.1979). Thus, a thorough transfer analysis is appropriate to determine if the balance of convenience favors transfer.

■ The principles governing transfer are well settled.[12] The principal factors to be considered in a transfer analysis include plaintiff's choice of venue, witness convenience and access, party convenience, and the interest of justice. *See generally Baylor Heating,* 702 F.Supp. at 1253; *see also Eastern Scientific,* 696 F.Supp. at 180 n. 13 (listing factors).

■ Defendant argues that its owners, Michael Nortung and Robert Herman, will be the most important witnesses because the knowledge and intent required for fraud is likely to be one of the most contested issues, and thus the convenience of the wit-

---

**9.** Defendant argues that dismissal, not transfer, is appropriate in this case if the Court finds no personal jurisdiction, but defendant is incorrect; in these circumstances, the interests of justice would favor transfer rather than dismissal. *See Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 594 (E.D.Va.1992) ("Section 1406(a) has been interpreted broadly to allow transfer where there are impediments to an adjudication on the merits, such as a lack of personal jurisdiction over the defendant, in a plaintiff's chosen forum.")

**10.** When a state action is removed to federal court, for first-to-file purposes, the state court filing date is the date used. *See 800–Flowers v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 131 (S.D.N.Y.1994).

**11.** *See Ontel Prod. Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1150 n. 9 (S.D.N.Y.1995) ("Case law indicates that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies."); *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County,* 542 F.Supp. 1317, 1321 (S.D.N.Y.1982) ("Absent such a rule [granting the first-filed court authority to decide venue

issues], there exists the possibility of inconsistent rulings on discretionary matters as well as the duplication of judicial effort."); *see also National Equipment Rental, Ltd. v. Fowler,* 287 F.2d 43, 45 (2d Cir.1961) ("Sound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated."); *Cessna Aircraft Co. v. Brown,* 348 F.2d 689, 692 (10th Cir.1965) (same).

**12.** The principles governing transfer under 28 U.S.C. § 1404(a) are conveniently summarized in Annotation, *Questions as to Convenience and Justice of Transfer Under Forum Non Conveniens Provision of Judicial Code (28 U.S.C. § 1404(a)),* 1 A.L.R. Fed. 15 (1969), and have been applied in a number of decisions of this Court. *See, e.g., Verosol,* 806 F.Supp. at 592–94; *Eastern Scientific Marketing, Inc. v. Tekna–Seal, Inc.,* 696 F.Supp. 173, 179–180 (E.D.Va.1988); *Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.,* 702 F.Supp. 1253, 1255–62 (E.D.Va.1988). These principles are also generally applicable to transfer pursuant to § 1406(a). *See Dee–K Enterprises, Inc. v. Heveafil Sdn. Bhd.,* 985 F.Supp. 640, 646 (E.D.Va.1997) (analyzing similar factors for transfer pursuant to § 1406).

nesses favors transfer. Defendant's argument, however, addresses the convenience of the parties rather than the convenience of nonparty witnesses. In fact, the parties' convenience is fairly evenly balanced, as both companies are small businesses whose owners would be significantly inconvenienced by having to travel half-way across the country to litigate or testify. Transfer is not appropriate merely to shift the hardships from the defendant to the plaintiff. *See Baylor*, 702 F.Supp. at 1259. Convenience of the parties therefore does not militate in favor of transfer.

Convenience of the non-party witnesses is a closer issue and ultimately cannot be confidently determined from the existing sparse record.[13] Defendant asserts, without elaboration, that Global employees, located in Illinois, are likely to be needed to testify about the breach of contract allegations, and that Illinois is hundreds of miles closer to Rochester, Minnesota than Alexandria. Plaintiff counters by asserting generally that employees of Intel's fraud division, which is based in California, are the witnesses whose testimony is most important, and that defendant and Global employees' testimony "is unlikely to be helpful." Neither party provides the "requisite particularity" about the expected witnesses and their potential testimony to accord this factor much weight. *See Baylor*, 702 F.Supp. at 1258 (describing need for particularized information, typically in affidavit form, identifying expected witnesses and specifically describing testimony).[14]

Although neither the convenience of the witnesses nor the parties is determinative, the interests of justice in this case compel transfer. The pending Minnesota action is the mirror image of this case, it raises precisely the same issues, arising out of precisely the same transaction as in this case. Thus, consolidation is feasible and would afford substantial economies for the parties and the judicial system.[15] Furthermore, the Minnesota action is at a more advanced stage; an answer has been filed, presumably settlement negotiations have taken place, and a pretrial conference either is imminent or has taken place.[16] Moreover, although it is the date of filing and not service of process that is significant for application of the first-filed rule, rigid application of the first-filed rule in this case seems unwarranted where the second action was filed only two weeks after the first action and process in the second action was served long before that in first action was served. *See Ontel*, 899 F.Supp. at 1153 (noting first-filed rule "usually disregarded" where suits filed merely days apart and finding rule "inapplicable" because suits were filed on same day).

## IV. Conclusion

It is pellucidly clear that two essentially similar federal actions in separate fora should not continue in parallel fashion; only one should go forward. Because this is the first-filed action, the jurisdiction and transfer issues should be decided here first. Personal jurisdiction over defendant here is doubtful. Given this, and given that the action in Minnesota is further along and that it appears that plaintiff has waived any defects in personal jurisdiction in the Minnesota action,

---

**13.** There is typically a tension in transfer motions between the duty to file such motions early in the action and the need to support that motion with affidavits identifying witnesses and the materiality of their testimony, information which may not be known until later in the case. *See, e.g., GTE Sylvania, Inc. v. Consumer Prod. Safety Comm.*, 438 F.Supp. 208, 212 (D.Del.1977) (denying transfer noting that "[t]he time for [defendant] to have moved for a transfer of these cases was in the early stages of this litigation ... before all the effort and work had been expended here").

**14.** Neither party addresses where any documentary or other physical evidence may be located. *See Verosol*, 806 F.Supp. at 593 (noting location of documentary evidence is factor under convenience of parties and witnesses pointing to transfer). In any event, no one suggests that such evidence is located chiefly in Virginia.

**15.** *See Baylor*, 702 F.Supp. at 1261 ("In general, the pendency of a related action in the transferee forum favors transfer where it will be both feasible and beneficial to consolidate the actions.").

**16.** It appears that the personal jurisdiction defects in the Minnesota action have been waived. Plaintiff did not contest defendant's statement at oral argument that plaintiff waived any defects in the Minnesota court's personal jurisdiction by making a general appearance in the Minnesota action. This is a further factor in favor of transfer. *See Verosol*, 806 F.Supp. at 594.

transfer to the United States District Court for the District of Minnesota is appropriate.

An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.