Franklin C. KOH and Francis H. Koh, Plaintiffs,

v.

MICROTEK INTERNATIONAL, INC.; Microtek Lab, Inc.; Microtek International Development Systems Division, Inc.; Micro Electronics, Inc., t/a Micro Center; and Micro Center Sales Corp., Defendants.

No. CIV.A. 3:02CV191.

United States District Court, E.D. Virginia, Richmond Division.

March 5, 2003.

Franklin C. Koh, Esquire, Potomac, MD, for Plaintiffs.

Kevin M. Henry, Esquire, Edward G. Poplawski, Esquire, Sidley, Austin, Brown & Wood, Washington, D.C., Jon E. Hokanson, Esquire, Hokanson & Drazich LLP, Los Angeles, CA, for Defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

### BACKGROUND

The plaintiffs, Franklin C. Koh and Francis H. Koh (collectively, the "Kohs"), own U.S. Patent No. 6,166,830 (the "'830 patent") entitled "Integrated Scan-to Store Apparatus," which discloses an electronic stand-alone scanner that scans images and stores them to a removable storage device. Francis H. Koh is a lawyer and is representing himself and Franklin C. Koh. The Kohs have filed a Fourth Amended Complaint against Microtek Lab, Inc. ("MLI"), Microtek International Development Systems Division, Inc. ("MIDSDI"), Micro Electronics, Inc. ("MEI"), and Micro Center Sales, Corp ("MCSC") (collectively, the "Defendants"). Although Microtek International, Inc. ("MII"), a Taiwanese corporation, is named in the Fourth Amended Complaint, the Kohs have not yet properly served MII.[1] All defendants bearing the name "Microtek" are related. MEI and MCSC are related to each other but not to the Microtek defendants.

The Fourth Amended Complaint alleges that the Defendants infringe the '830 patent by importing, using, offering to sell, or selling the patented invention within the United States. The Kohs further allege that MII, MLI, and MIDSDI are willful infringers who actively induce MEI and MCSC to infringe the '830 patent. Therefore, the Kohs request the following relief:

---

1. Because MII is a Taiwanese corporation, the Kohs may only effectuate service on MII pursuant to an international treaty. In a January 29, 2003 telephone conference, the Kohs represented that they are attempting to serve certain MII officers, who are also MLI officers, while those individuals are present in the United States.

(1) a declaratory judgment that the Defendants infringe the '830 patent; (2) an injunction preventing the Defendants from further infringement; (3) an accounting for the profits the Defendants have gained by infringing; (4) compensatory damages for the Defendants's previous infringement; (5) $4,000,000 due to the willful and intentional nature of that infringement; and, (6) a determination that this action is exceptional within the meaning of 35 U.S.C. § 285, and that, therefore, the Kohs are entitled to legal fees and related expenses.

MII is the Taiwanese parent corporation of MLI, which is a California corporation with its principal place of business in California. MLI's Vice President of Engineering, Loi Han, allegedly conceived the invention, a scanner product known as the "ImageDeck," and reduced it to practice in Redondo Beach, California. *See* Defendants' Motions To Dismiss And Transfer Venue ("Opening Br. p.__") Exh. C ¶ 7 ("Chow Affidavit"). An independent designer, SLH Design Corp., created the preliminary drawings for the ImageDeck and made the first ImageDeck housing prototype in Cypress, California. *Id.* ¶¶ 8, 10. A separate independent designer, Circo Design, completed the final ImageDeck design in Irvine, California. *Id.* ¶ 9. MII manufactures the ImageDeck exclusively in Taiwan and MLI imports the ImageDeck solely in Ontario, California, where it also warehouses ImageDeck units and distributes them domestically. *Id.* ¶¶ 11–14. All sales and marketing decisions respecting MLI's ImageDeck sales are made from MLI's headquarters in Carson, California and all of MLI's accounting books and business records are located in Carson. *Id.* ¶¶ 15, 16.

MLI is the parent corporation of MIDSDI, which is an Oregon corporation with its principal place of business in Oregon, where MIDSDI maintains all of its business records and accounting books. MIDSDI also has a secondary place of business in California. Opening Br. Exh. A, ¶¶ 3, 11 ("Ouyang Affidavit"). However, MIDSDI does not own or lease any property in Virginia, maintain any bank accounts in Virginia, or have any employees or agents in Virginia. *Id.* ¶¶ 5,6. At no time has MIDSDI used, sold, offered to sell, induced others to sell, or distributed the ImageDeck in Virginia or anywhere else in the United States. *Id.* ¶ 9. MIDSDI does sell microprocessor development tools in Virginia through an independent sales representative based in Newark, New Jersey, who visits Virginia to sell MIDSDI products approximately twice each year. *Id.* ¶ 8. The volume of MIDSDI sales in Virginia over the last three years have been: $0.00 in 2002; $10,183 in 2001, representing 0.7% of MIDSDI's total revenue; and $50,928 in 2000, representing 2.1% of MIDSDI's total revenue. *Id.* ¶ 10. Thus, these sales represent an insignificant percentage of MIDSDI's total revenue. In any event, these sales provide little connection between the forum and the claim here because these sales relate to technologies distinct from the patent and the accused product.

MEI, a Delaware corporation with its principal place of business in Ohio, is not a part of the Microtek corporate family. MEI's subsidiary, MCSC, owns and operates a retail store in Fairfax, Virginia where Francis Koh purchased one ImageDeck scanner. Opening Br. Exh. B, ¶ 5 ("Koehler Affidavit"); Fourth Amended Complaint Exh. B. Although the record does not reflect whether MCSC carries on any business activity in California, MEI directly owns and operates two retail stores in California, each of which has sold ImageDeck scanners. MEI and its subsidiaries have collectively sold a total of approximately 40 ImageDeck scanners in the past three years, eight of which were sold in Virginia *Id.* ¶ 7, 8. Thus, although

20% of the total sales of the allegedly infringing product occurred in Virginia, that relatively large percentage is the consequence of the *de minimis* ImageDeck sales overall, and is not reflective of any significant Virginia based sales volume or revenue.

On December 6, 2002, three of the Defendants, MLI, MIDSDI and MEI (collectively, the "Movants"), filed a Motion To Dismiss And To Transfer Venue, requesting transfer of this action from the Eastern District of Virginia to the Central District of California, pursuant to 28 U.S.C. § 1404, and dismissal of this action against MIDSDI for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). MCSC did not join in that motion because it was not made a party to this action until the Kohs moved for leave to file their Fourth Amended Complaint on January 14, 2003, which motion was granted on January 30, 2003.[2]

The motions to dismiss and to transfer venue have been fully briefed and, at the request of the parties, the Court dispenses with oral argument. In addition to addressing the motions to dismiss and transfer venue, it is also necessary to determine whether, in the interests of justice, severance and transfer of the remaining claims is an appropriate disposition. *See Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F.Supp. 970, 974 (N.D.Ill.1973) ("The claims of infringement against unrelated defendants involving different acts should be tried against each defendant separately.").

### DISCUSSION

**A. Transfer Under 28 U.S.C. § 1404(a)**

■ The controlling statute, 28 U.S.C. § 1404(a), provides that: "For the conve-

nience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, a decision whether to transfer an action to another district is committed to the district court's sound discretion, · *Southern Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir.1956), *cert. denied*, 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956), and, in considering whether to transfer venue, a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum. In this action, the resolution of these two inquiries warrants transfer to the Central District of California of all claims against all defendants except MCSC.

**1. Might An Action Against MEI, MCSC And The Microtek Entities Have Been Brought In The Central District Of California?**

■ In order to demonstrate that an action might have been brought in a proposed transferee district, a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district. *L.G. Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F.Supp.2d 804, 812 (E.D.Va.2001). The venue provision for patent infringement actions states, in relevant part, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of busi-

---

**2.** During a telephone conference on January 29, 2003, the Movants represented that they did not oppose the Kohs's motion to file the Fourth Amended Complaint and that the addition of MCSC would have no bearing on the disposition of their motion to transfer.

ness." 28 U.S.C. § 1400(b) (2003). The definition of "residence" is found in § 1391, which provides, in relevant part, "[f]or purposes of venue ... a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c) (2003). "Therefore, if a corporation 'resides' in a district within the meaning of § 1391(c), venue is proper in that district within the meaning of § 1400(b)" and "the tests for venue and personal jurisdiction are interchangeable for corporations." *L.G. Elecs.*, 131 F.Supp.2d at 809–10.

As a preliminary matter, the Kohs have not contested that venue and jurisdiction are proper in the Central District of California as to MEI and each of the Microtek Defendants and, as earlier indicated, MEI and the Microtek entities each carry on substantial business activity in that district. MLI is incorporated in California, has its principal place of business in California, and has admitted to engaging in the allegedly infringing activities in California. MIDSDI has contested jurisdiction in this district because it does not engage in infringing activities anywhere in the United States and because it has no place of business in Virginia and engages in only insignificant Virginia sales activity, but MIDSDI admits that its secondary place of business is in the transferee district. MEI has two retail stores in California where it admittedly sells Image-Deck units. Because MII has not yet been properly served, it suffices to note that, although MII manufactures the ImageDeck abroad, it directs that product into the United States only through its subsidiary, MLI, and only in California. *See Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (stating that establishing marketing channels for products in a forum may indicate an intent to serve residents

of that forum). In addition, if the Plaintiffs' allegations are correct, certain MII officers are also officers of MLI and are present and available for service in California. These contacts with California are sufficient to confer both venue and jurisdiction in the Central District of California over MEI and all of the Microtek defendants. *See International Shoe Co. v. Washington*, 326 U.S. 310, 318–20, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (holding that personal jurisdiction over a party is proper if the party has sufficient minimum contacts with the forum); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (holding that minimum contacts exist if the defendant has purposely directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities).

However, the record here establishes that MCSC is not amenable to *in personam* jurisdiction in California. Thus, notwithstanding the propriety of both venue and jurisdiction over the other defendants in the Central District of California, this action, as presently constituted, could not have been brought originally in that forum. Consequently, the Movants have not satisfied the first requisite for transfer under § 1404(a).

### 2. Severance of Claims Against MCSC

■ That, however, is not dispositive of the transfer issue because, in certain circumstances, a district court is empowered to order severance of defendants, to transfer the action as to some defendants and to issue a stay *sua sponte* as to the remainder of the action. *See,* Fed.R.Civ.P. 21; *Landis v. North American Co.*, 299 U.S. 248, 254–5, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("The power to stay proceedings is incidental to the power inherent in every

court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for the litigants."); *see also In re All Asbestos Cases Pending in the United States District Court for the District of Maryland,* 1983 U.S. Dist. LEXIS 10719, *11–12 (D.Md. Dec. 16, 1983) (en banc) ("Rule 21 ... permits the Court *sua sponte* to sever claims."). "[C]ourts should sever peripheral claims where the 'administration of justice would be materially advanced.'" *Corry v. CFM Majestic, Inc.,* 16 F.Supp.2d 660, 665 (E.D.Va.1998) (quoting *Wyndham Associates v. Bintliff,* 398 F.2d 614, 618–19 (2nd Cir.1968) *cert denied* 393 U.S..977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968)). Severance is also appropriate where a defendant is peripherally connected to the action with the consequence (whether intentional or not) that the burdens of trial are increased on other defendants who otherwise would have been entitled to a § 1404(a) transfer. *Id.* In sum, severance is appropriate where: (1) the claim to be severed is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims otherwise is warranted under § 1404(a). *Id.* This action satisfies all three criteria.

### (a) Peripheral Nature Of The Claims Against MCSC

■ As explained previously, MEI and the Microtek entities collectively develop, import, use, distribute and sell the ImageDeck in California. MII manufactures the ImageDeck in Taiwan, but the record reflects that the single point of entry into the United States is MLI's import activities in California. In contrast, MCSC owns and operates one store, located in Fairfax, Virginia, which is responsible for a small number of ImageDeck sales. *See* Koehler Aff. ¶¶ 5, 8. There has been no allegation that

MCSC manufactures the ImageDeck or engages in any infringing activity other than making the allegedly infringing sales.

Additionally, the claims against MCSC are peripheral to the central issues of the action. *See L.G. Elecs.,* 131 F.Supp.2d at 812. Specifically, the Kohs seek a declaratory judgment that the ImageDeck infringes the '830 patent and an injunction prohibiting the manufacture, use, sale, offers to sell, and importation in derogation of the Kohs's rights under the '830 patent. "Ultimately the infringement claim[s] against the manufacturer" and the sole importer are "more likely to restore contested property rights nationwide than securing an injunction enjoining a merchant from selling infringing products from existing inventory." *Id.* As a result, MCSC is only peripherally involved in this action. *See LG Elecs.,* 131 F.Supp.2d at 811 (holding that a patent infringement claim against a reseller of infringing products is only peripherally related to a claim against the manufacturer); *Corry,* 16 F.Supp.2d at 665 (holding that a patent infringement claim against a distributer of infringing products is peripheral to a claim against the manufacturer).

### (b) The Nature Of The Core Claims

The Kohs have no claim against MCSC for infringing the '830 patent unless the Kohs are first able to obtain a ruling that the Microtek entities are liable for patent infringement. If the Kohs are not able to obtain such a ruling, *i.e.,* if the ImageDeck product does not infringe the '830 patent, then MCSC will have committed no infringing act in distributing and selling the ImageDeck. On the other hand, if the Kohs obtain an infringement verdict against the Microtek entities, and the Kohs collect royalties from Microtek or MEI, the Kohs cannot in turn collect royalties from MCSC, to whom Microtek or

MEI sell ImageDeck units. *See Intel Corp. v. ULSI Sys. Tech., Inc.,* 995 F.2d 1566, 1568–69 (Fed.Cir.1993) (holding that a patentee can collect only one royalty from a patent infringement). Thus, the Kohs's patent infringement claims against the Microtek entities and MEI are the core claims in this action, and adjudication of them will dispose of any claims against MCSC. *See LG Elecs.,* 131 F.Supp.2d at 812 (holding that the adjudication of claims against an infringing product's manufacturer would resolve claims against a mere reseller); *Corry,* 16 F.Supp.2d at 665–66 (holding that the adjudication of claims against an infringing product's manufacturer would resolve claims against a mere distributer).

Therefore, it is appropriate to consider transfer of the claims against the Microtek defendants and MEI, having in mind severance and stay of the claims against MCSC.

### B. Transfer Of The Core Claims

■ In determining whether to grant a motion under § 1404(a), the principal factors for district court consideration include the plaintiff's choice of forum, witness convenience and access, party convenience, and the interest of justice. *Corry,* 16 F.Supp.2d at 666. Each of these factors is addressed *seriatim.*

### 1. The Plaintiff's Choice Of Forum

■ The initial choice of forum, from among those possible under the law, is a privilege given to the plaintiff. *Medicenters of America, Inc. v. T & V Realty & Equipment Corp.,* 371 F.Supp. 1180, 1184 (E.D.Va.1974). To overcome that privilege, a movant "bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought." *Id.* (emphasis added). There-

fore, the plaintiff's choice of forum is ordinarily entitled to substantial weight. *Acterna, L.L.C. v. Adtech, Inc.,* 129 F.Supp.2d 936, 938 (E.D.Va.2001). But, a plaintiff's chosen venue is not given such substantial weight when the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum. *Intranexus, Inc. v. Siemens Med. Solutions Health Serv. Corp.,* 227 F.Supp.2d 581, 583 (E.D.Va.2002); *Acterna* 129 F.Supp.2d at 939. Hence, it is necessary to determine whether the Eastern District of Virginia is a home forum for the Kohs and also to determine the degree to which their claims against the Microtek defendants and MEI are related to this district.

The Movants contend that the Kohs's choice of forum is entitled to little, if any, weight because the Kohs are not Virginia residents. *See Ion Beam Applications S.A., v. Titan Corp.,* 156 F.Supp.2d 552, 563 (E.D.Va.2000) ("where the plaintiff's choice of forum is a place where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued, that plaintiff's choice loses its [ ] status in the court's consideration."); *Eastern Scientific Marketing, Inc. v. Tekna–Seal, Inc.,* 696 F.Supp. 173, 179 (E.D.Va.1988) ("a plaintiff filing suit in a district where it is not a resident loses only some of the deference given its choice of venue."). The Kohs are Maryland residents, "but are within a few minutes drive to Mclean, Virginia, which lies across the Potomac River." Plaintiffs' Opposition To Defendants' Motions To Dismiss And Transfer Venue p. 11 ("Opposition Br. p.___"). The Kohs also contend that they have "substantial ties" to their chosen forum because Francis Koh is licensed to practice law in Virginia and "makes his living practicing law in Virginia." *Id.* For these reasons, the Kohs

claim that Virginia is their home forum "for all practical purposes." [3] *Id.*

In support of their "home forum for all practical purposes" analysis, the Kohs cite *General Creation, LLC v. Leapfrog Enterprises, Inc.*, 192 F.Supp.2d 503 (W.D.Va. 2002). In *General Creation*, the court found that the Western District of Virginia was "for all practical purposes, the equivalent of a home forum" for one of the plaintiffs. *Id.* at 505–06. The facts in *General Creation* are distinguishable, however, because the plaintiff in that action, General Creation International Limited ("GCIL"), was a corporation. As earlier explained, corporations have a residence, for venue purposes, in any forum where they purposely direct substantial business activity. *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174. In *General Creation*, GCIL's exclusive United States distributor was located in the forum and GCIL's founder, who invented the patented invention at issue, worked in the forum and possessed documents relating to the invention in the forum. *Id.* Thus, the court considered the Western District of Virginia to be GCIL's home forum because GCIL had no other home forum in the United States and it had "significant ties" to Virginia. *Id.* at 506.

The facts here are considerably different than those in *General Creation*. For instance, Francis Koh is licensed to practice law in the forum, but the extent of his Virginia legal practice beyond his *pro se* position as counsel for the Kohs in the instant dispute is questionable. *See* Defendant's Reply pp. 7–8 & n. 5 (stating that "Francis Koh fails to reveal the fact that at least as late as September 5, 2002, he was employed in Washington D.C. at the D.C.

Superior court, and not in Virginia."). Further, the pleadings filed by Mr. Koh reflect a mailing address in Potomac, Maryland, suggesting that he considers the situs of his law office to be there, not in Virginia. Although Francis Koh claims to possess documents relating to the invention, he does not allege that those documents are located in Virginia. Presumably such documents are located either at his home in Maryland or his office. Even if the record made by the Kohs was sufficient to create significant ties to Virginia (which it is not), it is clear that, for individuals, such as the Kohs, residence for venue purposes is the place of permanent residence or legal domicile, not where they may otherwise establish ties or occasionally work or visit. *See Finger v. Masterson*, 152 F.Supp. 224, 225 (W.D.S.C.1957) ("For venue purposes a person is a resident only where he is a citizen and domiciled, or where he makes his home; residence does not arise out of a transitory abode or out of a temporary sojourn in ·a place other than that of residence or domicile."). Thus, the Kohs's close geographic proximity and minimal ties to Virginia are not alone sufficient to render the Eastern District of Virginia their home forum because they are domiciled in Maryland.

On the other hand, unlike § 1400 and other venue provisions, § 1404(a) speaks not of "residence" but of "convenience." Thus, the reason a plaintiff's choice of a foreign forum is given less weight is because "it is often more difficult for the plaintiff to show why such a forum is more convenient for the plaintiff." 17 James Wm. Moore, *et al.*, Moore's Federal Practice § 111.13[1][c] (3d ed.2002). The Kohs face no such difficulty here.

---

**3.** The Plaintiffs also assert that Francis Koh has substantial ties to Virginia because he "possesses documents relating to the invention as well as documents to prove Plaintiffs'

case." This factor is more appropriate in evaluating the convenience to the parties and the witnesses, not in determining the Plaintiffs's home forum.

For one, the Kohs are proceeding *pro se* in this matter and, although it is not necessary in this circumstance, it is certainly preferable that they litigate in a forum where their attorney is licensed to practice law. Of course, convenience to counsel is not an appropriate consideration in resolving a motion to transfer venue. *Acterna*, 129 F.Supp.2d at 939; *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F.Supp.2d 689, 698 (E.D.Va.2000). Because the Kohs are proceeding *pro se*, however, their counsel is also a party, a patent owner, and one of the joint inventors. Putting to one side the evidentiary obstacles the Kohs may eventually face given Francis Koh's multiple roles in this litigation, the convenience to a party and a potential witness is indeed relevant in resolving a motion to transfer venue as further outlined below.

In addition, the Eastern District of Virginia is the closest legally available forum to the district in which the Kohs reside. As previously explained, the statute governing venue with respect to patent infringement claims requires that actions be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. *See* 28 U.S.C. § 1400(b). Here, none of the Defendants reside in Maryland as do the Kohs, nor does the record reflect that any infringing activity does now occur, or has ever occurred, in Maryland. Thus, the closest forum available to the Kohs in which venue is proper is the Eastern District of Virginia, where at least one allegedly infringing sale took place and where the seller has a regular and established place of business. Given that Section 1404(a) focuses on convenience, rather than residence, it would be imprudent to eliminate all deference to a plaintiff's choice of a foreign forum where, as here, the choice made is the closest forum to the

plaintiff's residence in which venue is proper. *See Burstein v. Applied Extrusion Tech.*, 829 F.Supp. 106, 110 (D.Del.1992) (defining the plaintiff's "home turf" as "the forum closest to the plaintiff's home in which plaintiff could effect personal service over the principal defendant.").

Nonetheless, it is true that "[u]ltimately, 'the weight given to plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action.'" *Quinton Instrument Co. v. Datascope Corp.*, No. 3:96cv160, 1996 U.S. Dist. LEXIS 22740 (E.D. Va. June 3, 1996) (quoting *Board of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253, 1256 (E.D.Va.1988)). Thus, if there is little connection between the claims and this judicial district, that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts. *See Baylor Heating*, 702 F.Supp. at 1257 (finding that plaintiff's selection of its home forum was reduced somewhat by the absence of any substantial nexus between the forum and the plaintiff's claims).

The only asserted connection between the claims against MEI and the Microtek defendants and this judicial district is the sale of ImageDeck units in an MCSC owned store in Fairfax, Virginia. Therefore, aside from the fact that MCSC is an MEI subsidiary, there is no relation between this district and the claims against the Microtek entities or MEI. Moreover, it appears that the ImageDeck product has been less than successful, at least in the Virginia. Tellingly, the purchase of a single unit by Francis Koh accounted for 2.5% of the total domestic sales volume and 12.5% of the total Virginia sales volume in the past three years. Because only limited sales activity occurred in this district and "federal courts are not solicitous

of plaintiffs claiming 'substantial weight' for their forum choice where the connection with the forum is limited to sales activity without more," the infinitesimal sales activity present here is not sufficient to accord substantial weight to the Kohs's chosen venue.[4] Considered as a whole on the record here, this factor—the plaintiffs's chosen forum—weighs in favor of transfer.

### 2. Witness Convenience And Access To Sources Of Proof

Determination of a motion to transfer venue necessitates weighing the convenience to the parties and witnesses in litigating in either venue. *Acterna*, 129 F.Supp.2d at 939. The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience. *Corry*, 16 F.Supp.2d at 667 n. 16. As the precedent of this district reflects:

> Witness convenience is often dispositive in transfer decisions. But the influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony. This type of particularized information, typically submitted in affidavit form, is necessary to enable the court to ascertain how much weight to give a claim of inconvenience. Inconvenience to a witness whose testimony is cumulative is not entitled to greater weight. By contrast,

greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue.

*Baylor Heating*, 702 F.Supp. at 1258.

The parties have made abundantly clear, through their discovery disputes, that "first to invent" under 35 U.S.C. § 102(g)(2) will be a primary issue in the ensuing litigation.[5] In this regard, MLI has identified one potential party witness, Loi Han, and two potential non-party witness, SLH Design and Circo Design, but has not specifically set out their potential testimony, how that testimony will be material and non-cumulative, or the degree to which it will be inconvenient to access that testimony in this district. Normally, where a movant fails to provide such particularized information, it cannot satisfy its burden to show that the forum is inconvenient for the witnesses.

On the other hand, there is a "tension in transfer motions between the duty to file such motions early in the action and the need to support that motion with affidavits identifying witnesses and the materiality of their testimony, information which may not be known until later in the case." *Affinity Memory & Micro, Inc. v. K & Q Enter.*, 20 F.Supp.2d 948, 955 n. 13 (E.D.Va.1998). Furthermore, it is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufac-

---

4. *Acterna*, 129 F.Supp.2d at 938; *see also GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 519 (E.D.Va.1999) (refusing to give dispositive deference to plaintiff's choice of forum despite defendant's sales of infringing devices in Virginia, substantial retail business in Virginia, and registration to do business in Virginia).

5. The parties participated in two telephone conferences on January 29, 2003 respecting discovery issues and the Defendants's intentions to rely on § 102(g)(2) to invalidate the '830 patent.

ture of the accused products are material. *Corry,* 16 F.Supp.2d at 667 n. 16 (finding sufficient proof of witness inconvenience where the record as a whole supported the conclusion that the majority of the witnesses were located where the allegedly infringing activities chiefly occurred); *Telepharmacy Solutions, Inc. v. Pickpoint Corp.,* 238 F.Supp.2d 741 (E.D.Va.2003) (finding sufficient proof of witness inconvenience where the defendant submitted a witness list confirming that most of the individuals involved in the design and manufacturing of the accused product were in California). Thus, although the Movants have not set out specifically any potential testimony, they have identified one individual who is located in California and two entities located in California, which participated in conception and reduction to practice of the accused product, and all of whom appear to have evidence respecting whether the accused product was initially abandoned, suppressed or concealed, and, if so, for how long. Two of these potential witnesses are non-parties whose inconvenience is entitled to greater weight in the § 1404(a) analysis. The person who conceived the invention of the accused product has been shown to live and work in the putative transferee forum. Likewise, the principal alleged infringers and the bulk of the alleged infringing activity has been shown to have occurred in the putative transferee forum.

The Kohs also have identified a nonparty witness, residing in Virginia, who is "a material witness to the conception of the Kohs' invention." Opposition Br. Exh. F ("Declaration of Donald E. Jarvis, II"). The Kohs, like MLI, also have failed to disclose any particulars about the testimony of their potential witnesses, whether it would be inconvenient to access that testimony in the Central District of California, whether the testimony would be cumulative to that given by the Kohs themselves,

or why *de bene esse* depositions of nonparty witnesses would be inadequate and live testimony required. *See Acterna,* 129 F.Supp.2d at 939 (giving little weight to the presence of the plaintiff's non-party witnesses in or near the forum because the plaintiff did not show why it would need live testimony or why *de bene esse* depositions were inadequate).

Thus, convenience of the witnesses "is a close issue and ultimately cannot be confidently determined from the existing sparse record ... [because] [n]either party [has] provide[d] the requisite particularity about the expected witnesses and their potential testimony to accord this factor much weight." *Affinity Memory & Micro v. K & Q Enters.,* 20 F.Supp.2d 948, 955 (E.D.Va.1998). Also, where "the original forum is convenient for plaintiff's witness, but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum ... transfer is inappropriate because the result of transfer would serve only to shift the balance of inconvenience." *Baylor Heating,* 702 F.Supp. at 1258 (citations and quotations omitted). As a result, witness convenience does not support a decision to transfer this action.

With respect to the ease of access to sources of proof, the Kohs claim to have evidence of their design, conception and reduction to practice of the claimed invention in this judicial district. This assertion seems to rest on the theory that the Kohs reside in the Eastern District of Virginia "for all practical purposes" because the Kohs do not actually claim to possess any such evidence within Virginia. Indeed, at every turn, the Kohs have avoided stating exactly where such evidence is located. *See, e.g.,* Opposition Br. pp. 11, 13–14, Exh. A ¶ 6 (affidavit of Francis Koh, apparently executed in Potomac, Maryland, stating that, "I am in possession of material documents and evidences needed to prove the

claims of patent infringement against the named Defendants."). Failure to make a particularized showing respecting the location of evidence undermines any weight the Court would otherwise accord based on the inconvenience of presenting that evidence in the transferee forum. *Quinton,* 1996 U.S. Dist. LEXIS 22740 at *16.

Absent such a particularized showing, the ease of access to sources of proof favors transfer because the defendants have met their burden on this issue by showing that the center of the accused activity is in California. *See Telepharmacy Solutions,* 238 F.Supp.2d 741 (finding that the balance of conveniences as to sources of proof weighed in favor of transfer where the center of the accused activity was in California); *Acterna,* 129 F.Supp.2d at 939 (finding that, although the inventors of the plaintiff's patent were located in Virginia and Maryland, such did not overcome the fact that the center of accused activity was in Hawaii).

It has been held that, in patent infringement actions, the preferred forum is that which is the center of the accused activity. *GTE Wireless,* 71 F.Supp.2d at 519. Of course, the so-called "center of activity" approach to resolution of venue issues in patent cases does not supplant the traditional change of venue analysis prescribed by § 1404(a) and the established jurisprudence applying it. Nor do patent cases enjoy an exemption from the substance of that jurisprudence. Rather, the center of gravity approach is best regarded as a shorthand reference to the convenience of witness and access to evidence components of the well-settled precepts for applying § 1404(a).

The Kohs claim that Virginia is the center of the accused activity because the infringing sale evidenced in the record occurred in Fairfax, Virginia. Opposition Br. p. 13. That assertion does not withstand scrutiny. A single infringing sale is sufficient to make the Eastern District of Virginia one proper venue with respect to a defendant that also has its residence or a regular and established place of business in the forum, *see* 28 U.S.C. § 1400(b), but it certainly does not suffice to make this district the center of accused activity where the majority of the accused acts occur elsewhere. The Fourth Amended Complaint charges importation, use, offering to sell, selling and inducing others to infringe all of which occurs in California. Indeed, the record reflects that all of the design, research, development, testing, importation, marketing, sales and offers to sell occur in California except an insubstantial number of Virginia sales. Fourth Amended Complaint p. 6. These demonstrated facts permit the inference that material witnesses and documents are located in the Central District of California and will be more readily accessible for discovery and trial in that judicial district. And, the record shows that there are substantially more witnesses and documents in that forum than in this one.

### 3. Party Convenience

The Kohs claim that a transfer to the Central District of California would substantially impair their ability to "work and make their livelihood" and that requiring them to litigate in California would impose a severe financial burden upon them and could ultimately force them to abandon their claims. Opposition Br. p. 14. To begin, the Court looks with some skepticism upon the Plaintiffs's claim that Francis Koh "makes his livelihood practicing law in Virginia," Opposition Br. p. 14, because the Kohs also have asserted in the record that they both "live and work in the Metropolitan area." *Id.* It is apparent, however, that the Kohs, who are proceeding *pro se* in this matter, live within driv-

ing distance of this Court and, although the Kohs have submitted no evidence respecting their financial circumstances, the Court does not doubt that transfer to California would increase the expense of this litigation to the Kohs. Indeed, the Kohs may face more hardship than some, perhaps many, litigants, but they have not demonstrated financial hardship at all, much less hardship of the sort that would foreclose prosecution of their claims in the transferee forum. A disparity in size and financial status may suggest a finding of inconvenience if the party presents convincing evidence that its financial position makes it incapable of litigating in the proposed forum. *Baylor Heating*, 702 F.Supp. at 1260–61. The Kohs, however, have provided no such evidence.

On the other hand, it is the Movant's burden to show that the they will face some hardship in litigating this matter in Virginia. The Court may presume that it is inconvenient for the Movants, just as for the Kohs, to litigate in a forum on the opposite coast of the United States. However, the Kohs have filed in the forum most convenient for them. Although the Movants may be inconvenienced, transfer would merely shift the balance of inconvenience from the Movants to the Kohs. *Baylor Heating*, 702 F.Supp. at 1259. "A mere shifting of the burden neither weighs in favor of retaining nor of transferring venue." *Intranexus*, 227 F.Supp.2d 581, 585 (finding that where the plaintiff was a small business owned and operated by a single individual, and the defendant was a large company with considerable resources, the balance of hardships did not favor either forum and the necessity of the plaintiff's presence in court made disrup-

tion and financial burden on the plaintiff inevitable). Therefore, this factor does not favor transfer of this action.

### 4. Interest Of Justice

The interest of justice consideration is "an analysis encompassing those factors unrelated to witness and party convenience." *Acterna*, 129 F.Supp.2d at 939–40. Such factors include the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment. *Id.* at 940. Of these, the only point that the Kohs raise in opposition to the motion to transfer is the disparity in the docket conditions between the alternate fora.[6]

This action is set for trial here on June 16, 2003. According to the Kohs's exhibit, apparently a document downloaded from a federal website, the average time for a case to reach trial in the Central District of California is 21 months.[7] Opposition Br. p 15 & Exh. G. Thus, a transfer could cause the Kohs as much as a 17 month delay in achieving a decision on their claims. This action will reach resolution within a matter of months in the Eastern District of Virginia, which favors retaining venue in this district. Nevertheless, docket conditions, although relevant, are a minor consideration, which a court must view in light of other relevant factors, and which will receive little weight if all other reasonable and logical factors result in a transfer of venue. *Intranexus*, 227 F.Supp.2d at 585; *GTE Wireless*, 71 F.Supp.2d at 520. As a result this factor

---

**6.** The Kohs improperly raise a number of convenience issues under the heading "Interest of Justice," each of which has been addressed above. *See infra* Parts B.2–3.

**7.** The Court notes that, according to the Kohs's exhibit, the average time from filing to disposition in the Central District of California is 7.1 months. Opposition Br. Exh. G.

militates against transfer but will receive little weight in the final analysis.

### 5. Summary

Although the Kohs have not chosen to bring this action in their home forum (Maryland), that is not alone sufficient to eliminate all deference to their choice of forum because the Eastern District of Virginia, an otherwise proper venue, is the closest venue to their home forum in which this action could have been brought. That said, very little deference is due to the Kohs's choice of forum because, although there is some connection between the claims against MCSC and this district, there is little, if any, connection between this district and the Kohs's claims against MEI and the Microtek entities, who are responsible for the great weight of the accused activity. More importantly, the center of the accused activity is in the Central District of California, and it is apparent that the predominant number of potential witnesses and documents relating to both infringement and damages are located in California. Because these factors weigh strongly in favor of transferring this action, they are not overborne by the consideration that actions generally, and perhaps this action specifically, will reach trial earlier in this district than in the transferee forum. Therefore, § 1404(a) warrants transfer of the claims against MEI and the Microtek entities to the Central District of California.

### CONCLUSION

The claims against MCSC are only peripherally related to the claims against MEI and the Microtek entities and resolution of the claims against MEI and the Microtek entities will completely dispose of the claims against MCSC. In addition, the claims against MEI and the Microtek entities could have been brought in the Central District of California and the balance of the applicable factors under § 1404(a) tips significantly in favor of a transfer of venue.

"The purpose of the patent venue statute is to limit plaintiff's choice of forum to the district of defendant's domicile and such other districts as are related in particular ways to defendant and his activities. For a non-domicile district to be permissible it must not only be a district in which the defendant has a continuing business presence, but it must also have a relationship to the subject matter of the particular suit" which presence and relationship in the this litigation are tenuous at best. *Funnelcap, Inc. v. Orion Industries, Inc.,* 392 F.Supp. 938, 943 (D.Del.1975). Under these circumstances, the proper course is to sever and stay this action as to MCSC and then to transfer the remaining claims against MII, MLI, MIDSDI, and MEI to the Central District of California. An appropriate Order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) the Defendants' Motion To Dismiss and Transfer Venue is GRANTED IN PART, as set forth herein, and DENIED IN PART insofar as it seeks dismissal of this action against Microtek International Development Systems Division, Inc.,

(2) the Plaintiffs' claims against Micro Center Sales Corp. are SEVERED from the claims against all other Defendants;

(3) the Plaintiffs's claims against Microtek International, Inc., Microtek Lab, Inc., Microtek International Development Systems Division, Inc., and Micro Electronics, Inc., shall be TRANSFERRED to the Central District of California; and

(4) Plaintiffs' claims against Micro Center Sales Corp. are STAYED pending resolution of the claims described in paragraph (3) in the Central District of California.

The Court declines to rule on the Plaintiffs' Motion For Leave To Render Service Of Process On Defendant Microtek International, Inc. Valid And Proper because that Motion is more appropriately decided in the transferee forum.

The Court has modified the Consent Order tendered by the parties to leave in effect their agreements respecting the conclusion of expert, fact and damages discover but deleting other provisions more appropriately dealt with by the transferee Court.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.