**AIRPORT WORKING GROUP OF
ORANGE COUNTY, INC, et
al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF
DEFENSE, et al., Defendants.**

**No. CIV.A. 02–1220(ESH).**

United States District Court,
District of Columbia.

Oct. 22, 2002.

Thomas Angelo Mauro, Washington, DC, for Plaintiffs.

Tomell L. Du Bose, Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

HUVELLE, District Judge.

Defendants have moved, pursuant to 28 U.S.C. § 1404(a), to transfer venue in this case to the United States District Court for the Central District of California, Southern Division, which is located in Orange County. Based on the pleadings, as well as the facts that plaintiffs have asked the Court to take judicial notice of, the Court grants this motion because the action originally could have been brought in the Central District of California and an analysis of the factors bearing on the convenience of parties and witnesses and the interest of justice supports a transfer to that forum.

### BACKGROUND

The underlying issue in this case relates to the disposal of surplus federal property at the former Marine Corps Air Station El Toro ("El Toro") in Orange County. Plaintiffs are three organizations and the president of one of the organizations, and each of them resides in or is based in Orange County, California. The primary goal of the organizations is to develop and implement long-term solutions to aviation demand in Orange County, principally by converting El Toro into a commercial airport in order to divert air traffic away from their neighborhood. Defendants are federal departments, agencies and agency officials, including the Department of Defense and the Department of the Navy, which have their official residence for venue purposes in the District of Columbia. Plaintiffs have challenged a decision by the Department of Navy, consistent with a recent ballot initiative approved by Orange County voters, designating the land for a "great park" and mixed-use development. (Defendants' Memorandum in Support of

Motion to Transfer Venue ("Defs.' Mem.") at 4–5.) The closure of El Toro was recommended in September 1993, pursuant to the Defense Base Reuse and Realignment Act of 1990, as amended, 10 U.S.C. § 2867. El Toro contains 4,738 acres of land in central Orange County. Approximately 3,741 acres were declared surplus to federal needs. The remaining 997 acres are being transferred to other federal agencies. (Compl.¶¶ 19–20.) The future use of El Toro was the subject of three California ballot initiatives between 1994 and 2000, in addition to the ballot initiative entitled "Measure W," which approved the "great park" plan. (Compl.¶¶ 28, 30, 34.)

Before issuing its final decision on the disposal and reuse of El Toro, the Navy, pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4312, *et seq.*, prepared an environmental impact statement assessing five alternatives. It received public comments regarding the proposed alternatives before completing the Final Environmental Impact Statement ("FEIS"). The Record of Decision ("ROD"), formalizing the Navy's decision regarding El Toro, was signed by the Deputy Assistant Secretary of the Navy for Installations and Facilities. *See* Record of Decision for Disposal and Reuse of the Marine Corps Air Station El Toro, Orange County and Irvine, CA, 67 Fed.Reg. 20961, 2002 WL 737201 (Apr. 29, 2002). (Defs.' Mem. at 4.) According to defendants, "the Navy staff who [ ] worked to prepare the environmental impact statement and Record of Decision" are located in Orange Country. (Defendants' Reply Memorandum in Support of Motion to Transfer Venue (Reply) at 4.)

In the underlying action, plaintiffs challenge defendants' compliance with NEPA and the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, and request declaratory and injunctive relief. Specifically, plaintiffs argue

that the potential environmental impact of the mixed, non-aviation land use options addressed in the Navy's FEIS do not provide an accurate assessment of the environmental impact of the proposed use of the property as described by the ROD. (Compl.¶¶ 16–18.)

## ANALYSIS

Defendants seek to transfer this case to the United States District Court for the Central District of California, Southern Division, pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Under this statute, the moving party bears the burden of establishing that transfer is proper. *Trout Unlimited v. United States Dep't. of Agriculture*, 944 F.Supp. 13, 16 (D.D.C.1996). Defendants must make two showings. First, they must establish that the action could have been brought in the Central District of California originally. *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Second, they must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer. *Trout Unlimited*, 944 F.Supp. at 16. The statute "place[s] discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness . . . . [and] calls on the [ ] court to weigh in the balance a number of case-specific factors" relating to both the private interests of the parties and the interests of the public. *Stewart Organization v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

> The private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.
>
> The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Trout Unlimited*, 944 F.Supp. at 16 (internal citations omitted).

In a civil action against an agency or department of the United States government or any of its officers or employees acting in their official capacity, venue is proper in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated." 28 U.S.C. § 1391(e). In the action before this Court, it is beyond dispute that venue is proper in the Central District of California, for the claim involves disposition of surplus federal property, El Toro, which is located in the Central District. Thus, the threshold requirement for transferring venue has been met, and the Court must proceed to address the relevant private and public factors.

## I. PRIVATE INTEREST CONSIDERATIONS

■ Plaintiffs' choice of forum is generally given deference in determining whether a transfer of venue is justified. *See Thayer/Patricof Education Funding v. Pryor Resources*, 196 F.Supp.2d 21, 31 (D.D.C.2002); *Greater Yellowstone Coali-*

*tion v. Bosworth,* 180 F.Supp.2d 124, 127 (D.D.C.2001); *Miccosukee Tribe of Indians v. United States,* No. 99CV2464, slip op. at 5 (D.D.C. December 27, 2000); *Wilderness Society v. Babbitt,* 104 F.Supp.2d 10, 12 (D.D.C.2000). "Deference to plaintiffs' forum choice is diminished where, as here, transfer is sought to the plaintiffs' resident forum." *Miccosukee Tribe,* slip op. at 5 (citing *Citizen Advocates for Responsible Expansion, Inc. v. Dole,* 561 F.Supp. 1238, 1239 (D.D.C.1983) (deference to plaintiffs' forum choice is diminished where "transfer is sought to the forum where the plaintiffs reside")); *see also Thayer/Patricof Education Funding,* 196 F.Supp.2d at 31 ("choice of forum is ordinarily afforded great deference, except when the plaintiff is a foreigner in that forum"). In addition, "the showing defendants must make is lessened ... where, as in this case, transfer is sought to the forum with which the plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state." *Trout Unlimited,* 944 F.Supp. at 17. Finally, any deference to plaintiffs' choice of forum is further mitigated if "the choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Trout Unlimited,* 944 F.Supp. at 16 (internal citation omitted).

Applying these principles here, plaintiffs' choice of forum is entitled to limited deference because all of the plaintiffs in this case are based in the Central District of California and the subject matter of the lawsuit, El Toro, is located there. More-over, the three connections between the District of Columbia and the controversy relied on by plaintiffs are too attenuated to create a meaningful factual nexus. Plaintiffs note that the ROD was signed by a Department of Navy official based in the District of Columbia and that the Commandant of the U.S. Marine Corp., who is in charge of the transfer of the base, works at the Pentagon. However, there is no evidence to suggest that these officials had an active or significant role in this matter. Further, any role played by officials in the District of Columbia is overshadowed by the fact that their decisions were based on work done by government employees in California, public comments received from Orange County residents and organizations, and Orange County land use plans, zoning ordinances and regulations, for the ROD required that the El Toro property be disposed of in a manner consistent with state and local land use plans and policies. (Compl.¶ 51.b.) The third connection between the District of Columbia and the controversy cited by plaintiffs is the General Services Administration's responsibility for the actual transfer of the El Toro property. GSA's role, however, is limited and administrative, and has no connection to the substance of plaintiffs' claim.[1]

Given the lack of any meaningful ties to this jurisdiction, this Court is particularly mindful of the admonition that courts "must be especially cautious in allowing [cases] to remain in the District of Columbia." *Trout Unlimited,* 944 F.Supp. at 17

---

1. This case is clearly distinguishable from *Wilderness Society v. Babbitt,* where the decisions regarding the development of oil and gas in Alaska had significant national implications that weighed against transfer to Alaska. *Wilderness Society,* at 13. In that case, the Secretary of the Department of Interior had significant involvement in the decision-making process—"[h]e made a six-day visit to the area, and met with and was briefed by local Inupiaq Eskimo residents, government and industry officials, and scientists." *Id.* at 14. In contrast, the decisions here have significant local, but no national, implications. Nor is there any evidence that the officials based in Washington played a role in the El Toro decisions comparable to the Secretary of the Interior's role in *Wilderness Society.*

(citing *Cameron v. Thornburgh*, 983 F.2d 253 (D.C.Cir.1993) ("Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere.")). Therefore, even if plaintiffs' choice of forum is entitled to some deference, it is far from dispositive where, as here, the case has minimal connection to the District of Columbia and other factors militate strongly in favor of transfer.

In contrast to the attenuated connection to the District of Columbia, the issues raised by this lawsuit are of great concern to the residents of Orange County. It is this county, not Washington, D.C., that will be directly impacted by the resolution of the public debate over the use of the El Toro land. It is also the citizens of Orange County who are the interested parties, since they have been involved, over an eight-year time period, in meetings and ballot initiatives regarding the land. Thus, even if the ROD was signed by a Navy official in Washington, D.C., that is not the significant event for purposes of this lawsuit. Rather, the ROD was the culmination of close to a decade's worth of study, public meetings and debate involving Navy officials at El Toro, local governmental entities, and local citizens and interested organizations, as well as the results of four ballot initiatives dating back to 1994. Thus, as was the case in *Miccosukee Tribe*, slip op. at 9, even if the ROD was finalized in Washington, D.C., the FEIS and the ROD were developed, reviewed publicly and prepared in Orange County.

In addition, while the convenience of witnesses is likely to be of no relevance since this is a review of an administrative decision, the location of the voluminous administrative (estimated to be over 100,-000 pages) at El Toro is significant. *See Trout Unlimited*, 944 F.Supp. at 18. Similarly, the convenience of the parties strongly supports transfer to Orange County. Every one of the plaintiffs and their lead counsel live in Orange County, and their interest in this matter arises solely from their residency in the vicinity of El Toro. And, even if there will be no trial, plaintiffs, as well as the local citizenry, will be in a better position to attend any court proceedings if the case is transferred.

## II. PUBLIC INTEREST CONSIDERATIONS

The interests of justice strongly militate in favor of transfer. As recognized by the Supreme Court, "[i]n cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home." *Gulf Oil v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). This case involves matters of immediate local concern, for as plaintiffs note, "[t]he controversy surrounding the closure and reuse of El Toro [ ] as a commercial airport has been swirling in the Southern California region for at least eight years, involving four elections and a far greater number of lawsuits." (Pls.' Opp at 3.) In addition, the citizens of Orange Country have participated in public hearings, voted on several ballot initiatives, and have sent "extensive and detailed written comments" expressing their views on how the base should be developed. (Defs.' Mem. at 8.) Thus, the disposition and future use of El Toro will have a profound effect on the local environment and the use of local resources.

While plaintiffs concede this point, they attempt to argue that this intense interest will result in the recusal of a large number of judges in the Central District who "reside in parts of Orange County, or have family that owns property there which would be affected by the ultimate decision in this case." (Pls.' Opp. at 10.) Plaintiffs offer no support for this rather curious argument other than to emphasize that the judges in the Superior Court of California, County of Orange and justices of the Court of Appeals of the State of California, Fourth Appellate District, Division Three, have recused themselves from this matter.[2] There are thirty-three judges in the Central District who have sworn to "faithfully and impartially discharge and perform all duties incumbent on … a United States District Judge under the Constitution and laws of the United States." 28 U.S.C. § 453. As recognized by this Court in *Hawksbill Sea Turtle v. FEMA*, 939 F.Supp. 1 (D.D.C.1996), "[i]t is extraordinary to charge that a particular court … cannot conduct a fair trial and issue an impartial judgement" even where a "heated atmosphere puts additional pressure on judges." *Id.* at 4 (transferring from the District of Columbia to the Virgin Islands action seeking to enjoin construction of housing project in the Virgin Islands even though public debate on the issue was "bitter" and plaintiffs' counsel and witnesses had been subjected to harassment).

Moreover, even assuming arguendo that all of the judges assigned to the district's Southern Division face potential conflicts of interest, which is highly unlikely, there are surely other judges in the Central District that can be assigned to this case.[3] Barring convincing evidence that the parties cannot receive a fair trial in the Central District of California, consideration of the public's interest in having local matters decided locally clearly outweighs any speculative argument regarding the lack of impartiality of the federal bench in Orange County.

Finally, the FEIS and the ROD were informed and guided by a multitude of local land use plans and zoning ordinances that will be central to a review of this matter. *See* 67 Fed.Reg. 20961. Consequently, a district court located in the Central District of California will benefit from its familiarity with local laws and regulations.

In short, this case arises from an administrative decision that involves land situated only in Orange County and affects only the local citizenry there. The interests of justice is of paramount significance, *see Trout Unlimited*, 944 F.Supp. at 19, and as a result, this case should be transferred to the location which is at the heart of this controversy.

## CONCLUSION

For the foregoing reasons, defendants' motion to transfer venue is granted. A separate Order accompanies this Opinion.

## *ORDER*

Upon consideration of defendants' Motion to Transfer Venue to the Central District of California, Santa Ana Division, the plaintiffs' response to that motion, the de-

---

**2.** While the Court takes juridical notice of the fact of these recusals, it cannot infer that the federal judges in the Central District will also have to recuse themselves. In the absence of any evidence to support plaintiffs' claim that federal judges in the Central District are similarly situated to the state court judges referenced by plaintiffs, there is simply no basis for even suggesting that the federal judges in the Central District labor under a similar disability.

**3.** In this regard, it bears noting that the El Toro property constitutes less than 1% of Orange County's 505,600 acres.

fendants' reply, and the entire record in this matter, it is hereby

**ORDERED** that defendant's motion [11–1] is **GRANTED**; and it is

**FURTHER ORDERED** that the Clerk is directed to transfer this action to the Clerk of the United States District Court for the Central District of California, Southern Division, to conduct all further proceedings in this matter.

**SO ORDERED**.