**LYCOS, INC., Plaintiff,**

v.

**TIVO, INC., Netflix, Inc., and Blockbuster, Inc., Defendants.**

**Action No. 2:07cv003.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 3, 2007.

---

Anish Rohit Desai, Brian Edward Ferguson, Joel Mark Freed, Patricia Elaine Chow, Raphael Vincent Lupo, McDermott Will & Emery, Washington, DC, Kristan Boyd Burch, Kaufman & Canoles PC, Norfolk, VA, for Plaintiff Lycos, Inc.

Dabney Jefferson Carr, IV, Robert Armistead Angle, Troutman Sanders LLP, Richmond, VA, Dawn Lee Serafine, John Curtis Lynch, Troutman Sanders LLP, Norfolk, VA, for Defendant TiVo, Inc.

Brent Lee VanNorman, Gregory N. Stillman, Hunton & Williams, Norfolk, VA, Darren Edward Donnelly, Hector Ribera, Lynn Harold Pasahow, Virginia Kay DeMarchi, Fenwick & West LLP, Mountain View, CA, Darryl M. Woo, Gaurav Mathur, Fenwick & West LLP, San Francisco, CA, for Defendant Netflix, Inc.

Eric Christopher Rusnak, Shanda Nicole Hastings, K & L Gates, Washington, DC, Jeffrey Louis Snow, Michael Eric Zeliger, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Boston, MA, for Defendant Blockbuster, Inc.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This is a patent infringement action filed by plaintiff Lycos, Inc. ("Lycos"), against defendants TiVo, Inc. ("TiVo"), Netflix, Inc. ("Netflix"), and Blockbuster, Inc. ("Blockbuster"). This matter comes before the court on the defendants' motion to transfer venue. For the reasons set forth herein, the defendants' motion to transfer venue is **GRANTED,** and this action is transferred to the United States District Court for the District of Massachusetts.

### I. Factual and Procedural History

#### A. Procedural History

On January 3, 2007, Lycos filed this patent infringement action against TiVo, Netflix, and Blockbuster. In its complaint, Lycos alleges that the defendants made, used, offered for sale, sold, and/or imported products, methods, and/or systems covered by U.S. Patent Number 5,867,799 ("the '799 patent") and U.S. Patent Number 5,983,214 ("the '214 patent"), which are owned by Lycos and relate to "information filtering technology." Lycos further alleges that the defendants induced others to infringe these patents and that the defendants committed contributory acts of infringement.

Although Lycos filed this patent infringement action on January 3, 2007, the defendants were not served with the complaint until April 30, 2007. In the interim, the parties held settlement discussions. In a letter dated January 29, 2007, counsel for Lycos indicated that "Lycos believes Blockbuster's recommendation system,

which is powered by ChoiceStream, directly implicates [Lycos's patents]." Defs.' Mem. of Law in Supp. of Mot. to Transfer, Rusnak Decl., Ex. 9. Consequently, on April 30, 2007, ChoiceStream filed a declaratory judgment action against Lycos in the United States District Court for the District of Massachusetts. In ChoiceStream's complaint, it asserts that the '799 patent and the '214 patent are invalid and not infringed.

On June 12, 2007, the defendants in this action filed the instant motion to transfer venue, in which they ask this court to transfer this action to the District of Massachusetts. On June 22, 2007, each of the defendants filed an answer asserting, like ChoiceStream, that the '799 patent and the '214 patent are invalid and not infringed. On July 2, 2007, the court received Lycos's opposition to the motion to transfer venue. On July 13, 2007, the court received the defendants' reply to Lycos's opposition. The matter is now ripe for review.

## B. Relevant Facts

TiVo is a Delaware corporation with its principal place of business in California. TiVo sells digital video recorders ("DVRs") and corresponding services to customers throughout the United States. Its customers use TiVo's DVRs and services to find and digitally record television programming, which can then be played back at the customer's convenience. TiVo's customers have access to a recommendation system that allegedly filters television schedules and recommends particular shows to users. The recommendation system was designed and developed in California.

TiVo electronically transmits television program guide information and software updates from California to the DVRs purchased by its customers.[1] Thus, although TiVo's DVRs and services are purchased and used by consumers in the Commonwealth of Virginia, TiVo has no resources, such as servers, computers, documents, employees, or facilities, in Virginia. Its employees and documents relevant to this lawsuit are primarily located in California.

Netflix is also a Delaware corporation with its principal place of business in California. Netflix offers a subscription movie rental service. After a person subscribes to Netflix's service, the subscriber can select movies he or she wishes to view on Netflix's Internet website. Netflix then mails the subscriber digital video disks ("DVDs") containing the selected movies. The DVDs are mailed from distribution centers located across the country. Netflix also distributes movies by electronically transmitting them via the Internet to its subscribers. Its subscribers can access a recommendation service, which generates customized and personalized movie recommendations.

Netflix has subscribers in Virginia. However, Netflix's online services were designed and developed in California, and it operates its website from California. Except for the resources used in transmitting movies electronically to its customers, all of the servers, processors, databases, and other resources used in the operation of Netflix's online service are located in California. Netflix owns a single distribution system in Virginia, and it transmits movies electronically via the Internet and mails DVDs to subscribers from this location. Nineteen employees work at the distribution center, but none of these employees has knowledge relevant to this action. None of the documents possessed by Net-

---

**1.** Information is also transmitted between TiVo's servers and a customer's DVR when the customer uses TiVo's recommendation system.

flix that are relevant to this action is located in Virginia.

Blockbuster is a Delaware corporation with its principal place of business in Texas. Blockbuster operates an online subscription movie rental service that is similar to the online service operated by Netflix. Like Netflix, Blockbuster offers a recommendation system as part of its online subscription service. Blockbuster's recommendation system is powered by software that was designed and developed by ChoiceStream, Inc. ("ChoiceStream"). ChoiceStream is a Delaware corporation with its principal place of business in Massachusetts. There are no relevant Blockbuster or ChoiceStream documents located in Virginia. Also, neither Blockbuster nor ChoiceStream has employees in Virginia who have knowledge relevant to this action. However, ChoiceStream has employees in Massachusetts who possess information relevant to this action, and Lycos has indicated that it "may need to take some discovery from ChoiceStream." Pl.'s Opp'n to Defs.' Mot. to Transfer at 12.

Lycos has its principal place of business in Massachusetts. It was a Delaware corporation until 2004, when it reincorporated in Virginia. All of Lycos's employees and facilities are located in Massachusetts.

The inventions claimed in the '799 patent and the '214 patent are derived from a common technical description. Dr. Andrew Lang ("Dr.Lang") and Donald Kosak ("Kosak") are the coinventors of both patents. Kosak is Lycos's Chief Technology Officer and resides in Massachusetts. Dr. Lang is not employed by Lycos. Dr. Lang resides in Massachusetts but spends half his time working in Pennsylvania.

Since the late 1980s, the Media Lab at the Massachusetts Institute of Technology ("the Media Lab") has been conducting and publishing research in the area of information filtering technology. In rejecting some of the original claims of the '799 patent on the ground of obviousness, the U.S. Patent and Trademark Office ("PTO") relied on a publication of a researcher at the Media Lab, along with two other prior art references.[2] The defendants assert that they "expect to require discovery of documents and witnesses at the Media Lab." Defs.' Mem. of Law in Supp. of Mot. to Transfer at 8.

## II. Analysis

■ "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In deciding whether to grant a motion to transfer venue, this court must conduct the following two inquiries: " '(1) whether the claims might have been brought in the transferee forum; and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum.' " *JTH Tax, Inc. v. Lee*, 482 F.Supp.2d 731, 735 (E.D.Va.2007) (quoting *Koh v. Microtek Int'l, Inc.*, 250 F.Supp.2d 627, 630 (E.D.Va.2003)).

### A. The District of Massachusetts Is a Proper Venue.

The court must address whether this action might have been brought in the District of Massachusetts, as the defendants seek a transfer of venue to that

---

**2.** Pursuant to 35 U.S.C. § 103(a), an invention is not patentable "if the differences between the subject matter sought to be patented and the prior art are such that the subject

matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."

forum.[3] Pursuant to 28 U.S.C. § 1400(b), a civil action for patent infringement may be brought in any district where the defendant resides. When the defendant is a corporation, it resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Thus, to determine whether the District of Massachusetts is a proper venue for this patent infringement action, this court must determine whether the defendants are subject to personal jurisdiction there.

To determine whether the assertion of jurisdiction over a defendant is proper, a district court must consider the following two issues: (1) whether the forum state's long-arm statute authorizes the exercise of personal jurisdiction over the defendant; and (2) whether the exercise of personal jurisdiction over the defendant comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Chisholm v. UHP Projects, Inc.*, 1 F.Supp.2d 581, 584 (E.D.Va.1998). However, because the reach of Massachusetts's long-arm statute extends to the outermost boundaries of the Due Process Clause, this court need only address whether the exercise of personal jurisdiction over the defendants would comport with the requirements of the Due Process Clause. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir.2006). To resolve this constitutional issue, the court must first ask whether the defendants have the minimum contacts with Massachusetts necessary to confer jurisdiction. *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 944–45 (4th Cir.1994). If so, the court must then consider whether the exercise of personal jurisdiction "would offend tradi-

tional notions of fair play and substantial justice." *Id.* at 945.

■ This case arises from the defendants' provision of recommendation services to their customers or subscribers in Massachusetts and throughout the United States via the Internet or through other electronic means. To determine whether a defendant's "electronic contacts" with a forum state are sufficient to confer jurisdiction, the Fourth Circuit has adopted the approach set forth in *Zippo Mfg. Co. v. Zippo Dot Com. Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir.2002). Under this approach, a state has the minimum contacts necessary to confer jurisdiction over a person located outside the state "when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714.

■ Each of the defendants in this action transmits, as part of its recommendation services, information to persons within Massachusetts via the Internet or through other electronic means. *See* Pl.'s Opp'n to Defs.' Mot. to Transfer at 4–5, 7–8 (describing the recommendation service offered by each defendant and explaining that the defendants, which are large national corporations, purposefully direct products and services that utilize infringing technology to their customers or subscribers). The nature of the defendants' interactions with Massachusetts's resi-

---

**3.** Lycos has not contested the defendants' assertion that the District of Massachusetts is a proper venue for this action. However, given that 28 U.S.C. § 1404(a) only authorizes this court to transfer this action to a district or division "where it might have been brought," the court deems it appropriate to address in a cursory manner whether Lycos could have brought this action in the District of Massachusetts.

dents is commercial, as each of the defendants charges its customers or subscribers for the use of its services. *See id.* at 7–8. Further, because these activities allegedly infringe Lycos's patents, they create a cause of action cognizable in federal courts, including those lying in Massachusetts. The defendants, therefore, have the minimum contacts with Massachusetts necessary to confer jurisdiction.

Having determined that the requirements of the minimum contacts test are met, the court must next turn to the issue of whether the exercise of personal jurisdiction "would offend traditional notions of fair play and substantial justice." *Lesnick,* 35 F.3d at 945. In doing so, this court must consider "such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies." *Id.* at 946. In this case, Massachusetts would have a strong interest in this action, as it is the home state of Lycos, the plaintiff. Moreover, as noted above, each of the defendants purposefully directed electronic communications to customers or subscribers in Massachusetts, and the purpose of such communications was commercial in nature. Under such circumstances, the exercise of personal jurisdiction over the defendants by a Massachusetts court would not be unfair or unreasonable. *See, e.g., Zippo,* 952 F.Supp. at 1127 (holding that forcing a defendant

to defend a suit in Pennsylvania was not unreasonable where the defendant allegedly infringed trademarks owned by a corporation having its principal place of business in Pennsylvania, and the defendant purposefully chose to pursue profits in Pennsylvania). For this reason, and because the defendants have the minimum contacts with Massachusetts necessary to confer jurisdiction, the exercise of personal jurisdiction by a Massachusetts court over the defendants would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. Accordingly, the District of Massachusetts is a proper venue for this action. *See* 28 U.S.C. § 1400(b); 28 U.S.C. § 1391(c).

**B. Transfer to the District of Massachusetts Is Warranted.**

 Having determined that the District of Massachusetts is a proper venue for this action, the court must next decide whether to exercise its discretion to transfer this action there. *See Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.,* 117 F.Supp.2d 515, 517 (E.D.Va.2000) ("The decision whether to grant a motion to transfer venue is within the sound discretion of the district court."). In making this determination, the court must consider the following factors related to convenience and justice: (1) the plaintiff's choice of venue; (2) the convenience of the parties and witnesses; and (3) the interest of justice. *See, e.g., Agilent Techs., Inc. v. Micromuse, Inc.,* 316 F.Supp.2d 322, 326 (E.D.Va.2004).[4]

---

4. In patent infringement actions, courts also consider whether the forum where the case was filed or the forum to which a defendant seeks a transfer is "the preferred forum" for the action. *See GTE Wireless, Inc. v. Qualcomm, Inc.,* 71 F.Supp.2d 517, 519 (E.D.Va. 1999). "The preferred forum" is the location of the center of the accused activity. *Id.* In this case, the accused activities are primarily

the defendants' acts of making, using, offering for sale, selling, and/or importing products, methods, and/or systems that allegedly infringe the '799 patent and the '214 patent. *See* Pl.'s Compl. ¶¶ 7, 11, 16. Because these activities were not centered in Virginia or Massachusetts, neither of these forums is "the preferred forum" for this action. Accordingly, the court will determine whether to trans-

### 1. The Plaintiff's Choice of Venue

■ In balancing the convenience and justice factors, courts generally give "substantial weight" to the plaintiff's choice of forum. *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F.Supp.2d 741, 743 (E.D.Va.2003). However, the plaintiff's choice of forum is not entitled to substantial weight if the chosen forum is not the plaintiff's "home forum," and the cause of action bears little or no relation to the chosen forum. *Id.* Instead, "if there is little connection between the claims and [the chosen forum], that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts." *Koh v. Microtek Int'l, Inc.*, 250 F.Supp.2d 627, 635 (E.D.Va.2003); *see Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 593 (E.D.Va.1992) (explaining that because "the cause of action is at best only tenuously related to this forum, plaintiffs' initial venue choice will not impede transfer if the relevant § 1404(a) factors point to another forum"); *see also Airport Working Group of Orange County, Inc. v. Dep't of Def.*, 226 F.Supp.2d 227, 230 (D.D.C.2002) ("Deference to plaintiffs' forum choice is diminished where, as here, transfer is sought to the plaintiffs' resident forum." (internal quotation omitted)).

■ In this case, Virginia is not the home forum of Lycos, which has its principal place of business in Massachusetts. Moreover, this action has, at best, a tenuous connection with Virginia. Although Lycos is incorporated under the laws of

Virginia, Virginia's laws of incorporation are not relevant to this lawsuit, and Lycos has no employees or other physical presence within the Commonwealth.

Lycos notes that Virginia's residents purchase and use allegedly infringing products, methods, and systems from the defendants. However, the defendants likely have this same contact with every other state in this nation. It is well-settled that the mere existence of limited sales activity within Virginia does not require this court to give the plaintiff's choice of forum substantial weight when balancing the convenience and justice factors. *See, e.g., Acterna, L.L.C. v. Adtech, Inc.*, 129 F.Supp.2d 936, 939 (E.D.Va.2001) (affording the plaintiff's choice of forum only "very slight weight" where the defendant's sales were not "unique to Virginia" and less than ten percent of total sales occurred here). Moreover, the fact that Virginia's residents use the purportedly infringing products, methods, and systems avails Lycos nothing, as Lycos is not suing those residents in this action. The acts relevant to this lawsuit, even with respect to Lycos's allegations that the defendants committed acts of contributory infringement and induced other to infringe its patents, are those of the defendants, not their customers and subscribers. The design and manufacture of the allegedly infringing products, as well as the design and development of the purportedly infringing online services, occurred outside of Virginia.[5] Also, the allegedly infringing

fer this action based solely on the three convenience and justice factors listed above. *See, e.g., Agilent Techs.*, 316 F.Supp.2d at 326–30 & n. 3 (concluding that Virginia was not the preferred forum for the action and then balancing the other three convenience and justice factors to determine whether transfer to the Southern District of New York was warranted).

**5.** Netflix operates a distribution center in Virginia, from which it mails DVDs and electronically transmits movies to customers. But none of the employees who work at the distribution center have knowledge relevant to this action, and there is no indication that Netflix's acts of mailing DVDs and transmitting movies infringe Lycos's patents. Rather, the crux of Lycos's complaint is that the recom-

recommendation services are provided by the defendants from locations outside of Virginia. It is, therefore, not surprising that no relevant documents or persons with knowledge relevant to this action are located here. In light of the circumstances outlined above, this court gives Lycos's choice of forum only slight weight. Lycos's choice of the Eastern District of Virginia as the forum for this action will thus not impede transfer, if the other convenience and justice factors point to the District of Massachusetts. *See Verosol B.V.,* 806 F.Supp. at 593.

## 2. The Convenience of the Parties and Witnesses

█ In evaluating the convenience of the parties, this court considers factors such as the "ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Samsung Elecs. Co. v. Rambus, Inc.,* 386 F.Supp.2d 708, 717 n. 13 (E.D.Va.2005). When considering the convenience of witnesses, this court draws a distinction between party-witnesses and non-party witnesses and affords greater weight to the convenience of non-party witnesses. *Id.* at 718. The party asserting witness inconvenience must proffer sufficient details regarding the witness and his or her testimony to allow the court to assess both the materiality of the evidence that the witness will offer and the inconvenience that will result from declining to transfer the action. *Id.* The witness convenience factor is less important when the appearance of the witnesses can be secured without the necessity of compulsory process. *Id.* at 719. On the other hand, greater weight is given to the potential inconvenience of witnesses "whose testimony is central to a claim and whose credibil-

ity is also likely to be an important issue." *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.,* 702 F.Supp. 1253, 1258 (E.D.Va. 1988).

At a threshold level, the court notes that there are no relevant documents or persons with knowledge relevant to this action located in Virginia. The purportedly infringing products, methods, and services of TiVo and Netflix were designed and developed in California. The documents and witnesses of TiVo and Netflix are thus located in that state. Turning to Blockbuster, its principal place of business is in Texas, which is thus presumably the location of its documents and witnesses. However, Blockbuster's recommendation service, which allegedly infringes Lycos's patents, was designed by ChoiceStream, a corporation with its principal place of business in Massachusetts. Lycos has indicated that it "may need to take some discovery from ChoiceStream." Pl.'s Opp'n to Defs.' Mot. to Transfer at 12. ChoiceStream's employees, all of which reside in Massachusetts, "may be asked to testify about the technology at issue in this case, ChoiceStream's current products and services, its research, design and development activities, the prior art, its own patent pending technology, the infringement allegations and certain financial issues related to Lycos's claim for damages." Defs.' Mem. of Law in Supp. of Mot. to Transfer, Gallagher Decl. ¶ 8. The fact that it would be more convenient for these non-party witnesses to testify in Massachusetts, where they reside, weighs in favor of transfer.

Lycos has its principal place of business in Massachusetts, and all of its employees and documents are located there. As Lycos asserts that it will be producing docu-

<hr/>

mendation systems operated by Netflix and the other defendants infringe the '799 patent and the '214 patent. *See* Pl.'s Opp'n to Defs.' Mot. to Transfer at 8.

ments in electronic format, the defendants may not need to conduct discovery of documents in Massachusetts. However, the fact remains that employees of Lycos who have knowledge relevant to this action are located in Massachusetts.[6] As these are party-witnesses, and it is not clear whether their credibility will be an important issue, the court declines to give substantial weight to the fact that it would be more convenient for them to testify in Massachusetts than in Virginia. *Samsung Elecs.*, 386 F.Supp.2d at 718. Nevertheless, the fact that the District of Massachusetts is a more convenient forum for them weighs to some slight extent in favor of transfer.

The defendants have indicated that they plan to conduct discovery of documents at the Media Lab in Massachusetts. While Massachusetts is certainly not the only location in this country where prior art relevant to their affirmative defense of patent invalidity may be located, the research of the Media Lab related to information filtering technology, and one publication arising from its research, formed the basis for a rejection of certain claims by the PTO during the prosecution of the '799 patent. Under such circumstances, it would be prudent for the defendants to

ascertain whether other publications of the Media Lab might provide a basis for invalidating the '799 patent, as well as the '214 patent, which arises from a similar technical specification as the '799 patent. Accordingly, the court deems it appropriate to afford some weight to the fact that the defendants will be searching for relevant prior art documents in Massachusetts.[7]

In addition, the defendants direct the court's attention to the potential inconvenience of Dr. Lang, one of the co-inventors of the '799 patent and the '214 patent. The defendants explain that Dr. Lang's testimony will be relevant to their affirmative defense of patent invalidity. Dr. Lang, a non-party witness, resides in Massachusetts, but he has agreed to testify in Virginia. Thus, there would be no need for the defendants to resort to compulsory process to secure his attendance here. In addition, at this early stage of the litigation, it is not clear whether Dr. Lang's testimony will be critical to the issue of patent invalidity or whether credibility will be an important issue with respect to any testimony he may offer. Thus, the court attributes only slight weight to the fact that it would be more convenient for Dr. Lang, a non-party witness, to testify in Massachusetts than in Virginia.[8]

**6.** For example, Kosak, one of the co-inventors of the patents at issue in this lawsuit, works for Lycos in Massachusetts. Also, the court notes that Lycos, in all likelihood, would call other employees to testify regarding the damages that Lycos has suffered as a result of the purported infringement of its patents.

**7.** The defendants have also argued that important "prior art witnesses," including researchers at the Media Lab, are located in Massachusetts. Defs.' Mem. of Law in Supp. of Mot. to Transfer at 10. At this stage of the litigation, although it seems likely that the defendants will be searching for prior art documents in Massachusetts, it is entirely unclear whether that search will bear fruit. Because the need for the "prior art witnesses" to

testify in this action may never materialize, the court declines to give any serious consideration to the inconvenience that these witnesses would suffer, if asked to testify in Virginia, or the potential costs of procuring their attendance here.

**8.** The court further notes that it might be easier for the defendants to depose Dr. Lang, who resides in Massachusetts but spends half his time working in Pennsylvania, if this action were transferred to the District of Massachusetts. If this action were transferred, the defendants might be able to schedule Dr. Lang's deposition to coincide with their need to appear in Massachusetts for another reason, such as to attend a pretrial hearing. Thus, a transfer of this action to the District

In sum, there are no witnesses or relevant documents in Virginia. On the other hand, Massachusetts is the location of some documents relevant to this lawsuit and is also the place of residence and/or employment of certain non-party witnesses and party-witnesses. Therefore, considerations related to the convenience of the parties and witnesses ultimately do weigh in favor of transfer.

### 3. The Interest of Justice

■ The interest of justice factor "encompasses public interest factors aimed at systemic integrity and fairness." *Byerson v. Equifax Info. Servs., LLC*, 467 F.Supp.2d 627, 635 (E.D.Va.2006) (internal quotation omitted). The most prominent elements of systemic integrity are "judicial economy and the avoidance of inconsistent judgments." *Id.* In evaluating fairness, this court considers "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.*

In this case, considerations related to systemic integrity favor transfer. On April 30, 2007, the same day that the defendants were served with the complaint in the instant action, ChoiceStream filed a declaratory judgment action against Lycos in the District of Massachusetts. Like the defendants, ChoiceStream contends that the '799 patent and the '214 patent are invalid and not infringed. Further, as Blockbuster's recommendation system is "powered" by ChoiceStream, the facts and legal issues relevant to the question of whether ChoiceStream infringed Lycos's patents are in all likelihood very similar to the facts and legal issues relevant to the question of whether

Blockbuster has infringed these patents. Under these circumstances, judicial economy, and thus systemic integrity, would be furthered if both these cases were litigated in the same forum. *See Samsung Elecs.*, 386 F.Supp.2d at 721 (explaining that "the litigation of related claims in the same tribunal facilitates efficient, economical and expeditious pre-trial proceedings and discovery, and prevents duplicative litigation and inconsistent results" and that "[t]ransfer and consolidation will serve the interest of judicial economy in most cases where the related actions raise similar or identical issues of fact and law" (internal quotations omitted)).

Lycos has come forward with two reasons why this court should disregard the fact that ChoiceStream filed a declaratory judgment action in the District of Massachusetts. First, Lycos argues that the declaratory judgment action was nothing more than a tactical measure to manipulate venue, noting that Blockbuster and ChoiceStream share the same counsel. However, Blockbuster and ChoiceStream are separate business entities. Further, Lycos stated in a letter to Blockbuster, one of ChoiceStream's customers, that "Blockbuster's recommendation system, which is powered by ChoiceStream, directly implicates [Lycos's patents]." Defs.' Mem. of Law in Supp. of Mot. to Transfer, Rusnak Decl., Ex. 9. In light of these facts, the court cannot conclude that the filing of the declaratory judgment action was a forum-shopping tactic.

Second, Lycos argues that transfer to Massachusetts is inappropriate because of the first-to-file rule. Under the first-to-file rule, the first-filed action is generally preferred when two identical actions are pending in two federal courts. *Samsung*

---

of Massachusetts might make this litigation more convenient for Dr. Lang himself, while also making it easier for the defendants to access him.

*Elecs.*, 386 F.Supp.2d at 724. "The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources." *Id.*

In this case, the declaratory judgment action was filed after Lycos filed this action,[9] but it was filed by an entity that is not a party to this action. Identity of parties is, therefore, lacking. Also, as noted above, the court cannot conclude on the facts of this case that the filing of the declaratory judgment action was a forum-shopping tactic. Furthermore, the transfer of this action to the District of Massachusetts will likely serve, rather than undermine, the primary purpose of the first-to-file rule, because judicial economy may well be furthered if both this action and the declaratory judgment action are litigated in the same forum.

In addition to considerations of systemic integrity, this court must also take account of considerations related to fairness. In this case, however, many of the fairness considerations are irrelevant. For example, this action is not a "local controversy," and as it arises under federal patent law, there are no potential conflicts of laws. The District of Massachusetts is just as capable of applying federal patent law as this court.

Lycos notes that relative docket conditions militate against transfer, because this case would progress to trial at a more rapid pace in this court than in the District of Massachusetts. However, docket conditions are only "a minor consideration" where, as here, the other convenience and justice factors weigh in favor of transfer. *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 520 (E.D.Va.1999); *see Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F.Supp.2d 689, 699 (E.D.Va.2000) (explaining that docket

conditions should not be the primary reason for declining to transfer a case). Moreover, the court deems it particularly inappropriate to give substantial weight to docket conditions in this case, because Lycos delayed serving the defendants with its complaint until about four months after filing this action. *See supra* Part I.A. Accordingly, the court attributes only very slight weight to the fact that docket conditions favor retaining this case. As the court concludes that this factor is outweighed by considerations related to judicial economy, the interest of justice factor favors transfer.

**4. Summary**

 Lycos's choice of forum is not entitled to substantial weight because the Eastern District of Virginia is not its "home forum," and this patent infringement action has little or no connection with Virginia. Under such circumstances, the fact that Lycos chose to file this action in this court does not impede transfer, if the other convenience and justice factors point to another forum. Factors related to the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer to the District of Massachusetts. To the extent it is appropriate to give any weight at all to Lycos's choice of forum, the fact that Lycos chose to litigate in this forum is outweighed by these other factors. Accordingly, transfer to the District of Massachusetts is appropriate.

**IV. Conclusion**

For the reasons set forth above, the defendants' motion to transfer venue is **GRANTED.** This matter is hereby **TRANSFERRED** to the District of Mas-

---

9. The court notes, however, that Lycos served the complaint in this action on the same day as ChoiceStream filed the declaratory judgment action. *See supra* Part I.A.

sachusetts. The Clerk shall take the necessary steps to effect the transfer.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the plaintiff and the defendants.

**IT IS SO ORDERED.**