JOHN D. BATES, United States District Judge
Three environmental conservation organizations filed this lawsuit challenging the adequacy of the Final Environmental Impact Statement ("FEIS") prepared by the U.S. Army Corps of Engineers in connection with the Corps' update of the Master Water Control Manual ("Master WCM") governing the operation of federal dams and reservoirs in the Apalachicola-Chattahoochee-Flint River Basin (the "ACF Basin"). Compl. [ECF No. 1] ¶ 1. Plaintiffs allege that the Corps' failure to prepare an adequate FEIS violated the National Environmental Policy Act of 1969 ("NEPA"), the Water Resources Development Act ("WRDA"), and the Administrative Procedure Act ("APA"); and that the Record of Decision authorizing the Corps' update violated NEPA, the WRDA, the Fish and Wildlife Coordination Act, and the APA. Id. ¶¶ 2-3.
Plaintiffs designated this case as related to another lawsuit filed in this district by Alabama, see Alabama v. U.S. Army Corps of Eng'rs, No. 17-607-JDB (D.D.C.) (the "Alabama case"); Pls.' Notice of Related Case [ECF No. 5] at 1, which alleges that the Corps violated the APA, NEPA, and the Water Supply Act of 1958 by issuance of the Master WCM and the FEIS. Georgia and a group of Georgia Water Supply Providers intervened in both cases and moved to transfer the cases to the Northern District of Georgia, or alternatively to the Southern District of Alabama. See Georgia's Mot. to Transfer [ECF No. 34] at 1; Georgia Water Supply Providers' Mot. to Transfer [ECF No. 37] at 1. The *169 government defendants "support transfer of venue to any district in the Eleventh Circuit where venue is otherwise proper." Gov't's Notice of Concurrence [ECF No. 38] at 1. This Court has now issued a memorandum opinion and order granting the motions to transfer the Alabama case to the Northern District of Georgia. See Order, Alabama v. U.S. Army Corps of Eng'rs, [ECF No. 40] at 1; Mem. Op., Alabama v. U.S. Army Corps of Eng'rs, [ECF No. 41]. For the reasons set forth in the order and memorandum opinion in the Alabama case, and those stated briefly below, the Court concludes that the relevant private- and public-interest factors weigh in favor of transferring this case to the Northern District of Georgia, as well.
In short, this case involves a localized controversy that has far stronger ties to the states that comprise the ACF Basin-Georgia, Alabama, and Florida-than to the District of Columbia. The rivers, reservoirs, and Corps projects at the center of this dispute are all located within the ACF Basin, as are the people, environments, and commercial interests that will be directly affected by a decision in this case. Decidedly, this controversy will have no real-world impact on this district. Hence, the "most important factor"-the "interest in having localized controversies decided at home"-strongly weighs in favor of transfer. Western Watersheds Project v. Pool, 942 F.Supp.2d 93, 102 (D.D.C. 2013) (quoting Adams v. Bell, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983) ); see also id. ("[T]he interests of justice are promoted when a localized controversy is resolved in the region it impacts.").[1]
Moreover, the overwhelming majority of Corps personnel who made the decisions being challenged here, i.e., the Master WCM and the FEIS, performed their work within the ACF Basin, primarily in Atlanta and Mobile but also in Florida. See Pls.' Opp'n [ECF No. 42] at 32 (conceding that "much of the underlying work was assigned to the Mobile District"); Preservation Soc'y of Charleston v. U.S. Army Corps of Eng'rs, 893 F.Supp.2d 49, 55, 59 (D.D.C. 2012) (transferring case to the forum *170 "wherein the project itself, the decisionmakers, and the affected community are all located"). The involvement of federal officials in Washington, in contrast, pales in comparison. See Airport Working Group of Orange Cty., Inc. v. U.S. Dep't of Defense, 226 F.Supp.2d 227, 230 (D.D.C. 2002) (transferring case when "any role played by the officials in the District of Columbia [was] overshadowed by the fact that their decisions were based on work done by government employees in California"); see also Pac. Mar. Ass'n v. NLRB, 905 F.Supp.2d 55, 60, 62 (D.D.C. 2012) (transferring case because "[a]lthough the final act transpired in the defendant's Washington, D.C. headquarters, the rest of the play was set elsewhere" and Oregon was the "true locus of this dispute").
Finally, the interest of justice will be served by transferring these two related cases to the same district. See Defs. of Wildlife v. Jewel, 74 F.Supp.3d 77, 87 (D.D.C. 2014) ("[T]he interest of justice factor encompasses the desire to avoid multiple litigation from a single transaction [and] to try related litigation together." (alteration in original) (citation omitted) ); FTC v. Cephalon, Inc., 551 F.Supp.2d 21, 29 (D.D.C. 2008) ("[T]he interest of justice dictates that transfer is appropriate to avoid subjecting a defendant to the grave risk of inconsistent judgments deriving from the same conduct.").
Accordingly, it is hereby ORDERED that Georgia's [34] and the Georgia Water Supply Providers' [37] motions to transfer venue are GRANTED , and it is further
ORDERED that this case is hereby TRANSFERRED to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).
SO ORDERED .

The Court is unconvinced by plaintiffs' various arguments that this is a national, as opposed to local, controversy with a significant nexus to this district. For instance, plaintiffs highlight that the Apalachicola ecosystem: (1) includes a National Estuarine Research Reserve, (2) has been designated by UNESCO as an International Biosphere Reserve, (3) has been the subject of interest by members of Congress, and (4) has garnered national media attention. See Pl.'s Opp'n at 4-17. Yet very similar facts were present in Sierra Club v. Flowers, and the court determined that although the controversy had "a national aspect," transfer was appropriate because the controversy was "local to Florida and is one in which Florida and its residents have a great interest." 276 F.Supp.2d 62, 70-71 (D.D.C. 2003) ; see also Nat'l Wildlife Fed'n v. Harvey, 437 F.Supp.2d 42, 47 (D.D.C. 2006) ("[P]recedent in this circuit does not require or even encourage resolution in this forum of ESA and other environmental claims involving national known resources." (citation omitted) ). Indeed, the court in Flowers found that letters from members of Congress underscored the localized nature of the controversy: "[T]he members of Congress to whose letters the plaintiffs cite all represent Floridians, thereby underscoring the unique importance that the permits hold for residents of Florida." 276 F.Supp.2d at 71. Plaintiffs' other supposed connections are too attenuated from the decisions challenged here. For example, plaintiffs point to an earlier effort by then-Secretary of Interior Kempthorne to mediate a separate dispute in 2007 and 2008 between Florida, Georgia, and Alabama. See Pls.' Opp'n at 10-11. But that dispute did not concern the Master WCMor the FEIS challenged here, which the Corps had not even begun to update at that time. Likewise unavailing is plaintiffs' reliance on a one-day workshop convened by the National Academy of Sciences in 2009. Id. at 11. Plaintiffs do not even allege that the workshop had any effect on the Master WCM. And even if it did, almost all of the Corps officials involved came from Mobile or Atlanta.